OPINION OF THE COURT
 

 Titone, J.
 

 General Obligations Law § 11-101 (1), popularly known as the Dram Shop Act, makes a party who "unlawfully” sells alcohol to another person liable for injuries caused by reason of that person’s intoxication. Under Alcoholic Beverage Control Law § 65 (2), it is unlawful to furnish an alcoholic beverage to any "visibly intoxicated person.” The present appeal concerns the sufficiency of an expert’s affidavit based solely on the intoxicated tortfeasor’s blood and urine alcohol counts to establish prima facie the "visible intoxication” elements of a Dram Shop Act claim under these provisions.
 

 This litigation arises out of a January 18, 1991 automobile accident in the Town of Colonie in which plaintiff Marie Romano was injured and Nancy Stanley, defendant Harold Stanley’s decedent, was killed. According to the parties’ submissions, the accident occurred at about 10:30 p.m., when Stanley’s vehicle crossed the center line of the road and collided with Romano’s automobile. Alleging that Stanley had been intoxicated at the time of the accident, plaintiff brought the present action against Stanley’s estate and the three establishments that had purportedly served alcohol to her on the evening of the accident.
 

 Following discovery, two of these defendants, Jack’s Oyster House and Martel’s of Broadway, moved for summary judgment dismissing the complaint and cross claims against them. The papers submitted in support of the motions included assertions aimed at establishing that Stanley had not been "visibly intoxicated” while she was on the moving defendants’ premises. According to the submissions, Stanley arrived at Jack’s immediately after work on the afternoon of the 18th and left by 6:45 p.m. A co-worker who saw her there testified at her deposition that Stanley had had only one 8- or 12-ounce beer and had not been intoxicated while she was at Jack’s. Three other coworkers who were acquainted with Stanley agreed that she did not appear intoxicated. A similar conclusion was drawn by Jack’s bartender, who knew Stanley from her previous visits to
 
 *448
 
 the bar and had reportedly served her only one 12-ounce glass of beer on the afternoon of the accident.
 

 Stanley left Jack’s with two of her co-workers and went on to Martel’s, where she was served two more drinks, at least one of which was bourbon. None of the witnesses who saw her at Martel’s observed any indications of Stanley’s being intoxicated. After leaving Martel’s, Stanley drove a few miles away to Dee Dee’s Tavern, the third establishment sued in this action. Arriving between 9:15 and 9:30 p.m., Stanley met three of the co-workers who had been at Jack’s and Martel’s with her. By the time she left approximately an hour later, one of her acquaintances observed that Stanley appeared intoxicated and expressed concern about her driving. The fatal accident occurred soon after Stanley left Dee Dee’s.
 

 In response to the submissions by defendants Jack’s and Martel’s, plaintiffs submitted copies of a town police accident report and a New York State Police Crime Laboratory report indicating that Stanley had a blood alcohol level of 0.26% and a 0.33% level in her urine when she died. Additionally, plaintiff submitted an affidavit by a Dr. Thomas Oram, a forensic pathologist employed as a medical examiner for Schenectady County. Oram’s affidavit, which relied on the toxicology report, asserted that, given Stanley’s blood alcohol count at the time of the accident and given the normalcy of her liver and other organs, she would have had "a substantial amount of alcohol — approximately 0.15 or more percent blood alcohol by weight — four to five hours prior thereto.” Further, "it would be * * * physically impossible * * * for there to be 0.33 percent alcohol in the urine if Nancy Stanley first became intoxicated in Dee Dee’s, where she was reported to be approximately only one hour prior to the accident.” Consequently, Dr. Oram opined, she "had to have been intoxicated prior to the time that she reportedly arrived at Dee Dee’s Tavern” and, more precisely, she "had to have been intoxicated, and have a blood alcohol level of substantially above the legal limit * * * (0.10 percent in the blood by weight) both during the time period that she is reported to have been at Jack’s * * * and during the time period that she is reported to have been at Martel’s.”
 

 It was Dr. Oram’s opinion "to a reasonable degree of medical certainty” that "Stanley would have and did show visible signs of intoxication while she was both at Jack’s Restaurant, and at Martel’s Bar.” Specifically, she would have had "gaze nystagmus, * * * an inability to control the focus and gaze of the eye * * *[, a] phenomenon * * * which develops at intoxication
 
 *449
 
 levels of approximately 0.10, and is very noticeable to the trained eye when a person has a blood alcohol level of approximately 0.13.” Further, while she was at Jack’s and Martel’s, Stanley would have had glassy eyes, motor impairment, and difficulty speaking and controlling the level of her voice, "all signs that a trained bar tender could and should * * * recognize as physical sign[s] of intoxication.” Although it provided some information about the manner in which alcohol is metabolized, Dr. Oram’s affidavit did not refer to the scientific or personal professional basis for his conclusions about Stanley’s blood alcohol count while she was at Jack’s and Martel’s or for his assertions about how she must have looked and acted at that time.
 

 Having reviewed the parties’ submissions, Supreme Court denied the motions for summary judgment, noting that there were issues of fact regarding Stanley’s state of intoxication when she was served at defendants’ bars. On appeal, the Appellate Division affirmed. The three-Justice majority rejected as "too constrictive” defendants’ argument that the Oram affidavit was insufficient to establish Stanley’s "visible intoxication” because it was based on Stanley’s blood alcohol content rather than on eyewitness observations (220 AD2d 5, 7-8). The Appellate Division subsequently granted defendants leave to take a further appeal to this Court, certifying the following question: "Did this court err, as a matter of law, in affirming the order of Supreme Court denying motions by defendants Martel’s of Broadway, Inc. and Jack’s Oyster House, Inc. for summary judgment dismissing the complaint against them?”
 

 Plaintiffs’ Dram Shop Act cause of action against defendants rests on the premise that they "unlawfully” sold alcoholic beverages to Stanley, a "visibly intoxicated person,” in violation of Alcoholic Beverage Control Law § 65 (2) (see, General Obligations Law § 11-101 [1]). As currently drafted, section 65 (2) is designed to "ensure that alcoholic beverage licensees have sufficient notice of a customer’s condition before they can be subject to a potential loss of their license or to civil liability * * * for injuries subsequently caused by the intoxicated person” (Governor’s Approval Mem, 1986 McKinney’s Session Laws of NY, at 3194;
 
 see,
 
 L 1986, ch 750). The "visibly intoxicated” standard was specifically crafted to limit the tavern keeper’s exposure and to preclude the imposition of a regulatory or monetary penalty when "he or she had no reasonable basis for knowing that the consumer was intoxicated” (Governor’s Approval Mem,
 
 op. cit.).
 

 
 *450
 
 Relying on the statutory language and goal, defendants contend that plaintiffs’ submissions were necessarily deficient because there was no eyewitness proof that Stanley had exhibited signs of intoxication at the time she was served in their establishments. The Legislature’s use of the term "visible,” however, does not create a rigid requirement that that essential element of the claim be established by direct proof in the form of testimonial evidence from someone who actually observed the allegedly intoxicated person’s demeanor at the time and place that the alcohol was served. To the contrary, as was recognized at the time section 65 (2) was amended, the statutory language "[does] not preclude the introduction of circumstantial evidence to establish the visible intoxication of the customer” (Governor’s Approval Mem,
 
 op. cit.,
 
 at 3194).
 

 The foregoing leads to the second question raised by defendants’ appeal: the nature and quality of the circumstantial proof that will suffice to establish the "visibly intoxicated” element of the claim. In cases involving substance abuse, blood and urine tests are the most common source of circumstantial proof. Blood alcohol tests are often administered when alcohol-induced intoxication is suspected
 
 (see,
 
 Vehicle and Traffic Law § 1194), and, indeed, our statutory scheme for penalizing drunk driving utilizes a blood alcohol count of .10 % or higher as a benchmark for per se intoxication
 
 (see,
 
 Vehicle and Traffic Law § 1192 [2]). Further, at least one court has held that a high blood alcohol level is some evidence of an individual’s intoxicated condition
 
 (Johnson v Plotkin,
 
 172 AD2d 88,
 
 Iv dismissed
 
 79 NY2d 977).
 

 Proof of a high blood alcohol count alone, however, generally does not establish the "visible” intoxication that Alcoholic Beverage Control Law § 65 (2) requires. First, permitting blood and urine alcohol content
 
 to
 
 serve as an automatic substitute for perceptible intoxication would run counter to the legislative goal of requiring an innkeeper’s actual knowledge or notice of the customer’s condition as a predicate for an "unlawful” sale. Second, it is well known that the effects of alcohol consumption "may differ greatly from person to person”
 
 (Burnell v La Fountain,
 
 6 AD2d 586, 590) and that tolerance for alcohol is subject to wide individual variation
 
 (People v Cruz,
 
 48 NY2d 419, 426). Thus, even where it can be established,
 
 *
 
 a high blood alcohol count in the person served may not provide
 
 *451
 
 a sound basis for drawing inferences about the individual’s appearance or demeanor.
 

 In this case, the proof offered to bridge this evidentiary and logical gap was an expert’s affidavit asserting that in view of Stanley’s blood alcohol level when she was served at Jack’s and Martel’s, she necessarily must have exhibited the symptoms of intoxication that are familiar to trained bartenders: gaze nystagmus, glassy eyes, motor impairment and difficulties in controlling her speech and voice levels. The problem with this proffered proof was not that it was based on laboratory tests, but rather that the expert’s ultimate conclusions were both speculative and conclusory. As this Court has previously stated, " '[w]here the expert states his conclusion unencumbered by any trace of facts or data, [the] testimony should be given no probative force whatsoever’ ”
 
 (Amatulli v Delhi Constr. Corp.,
 
 77 NY2d 525, 533-534, n 2).
 

 Here, although the underlying facts on which plaintiffs’ expert based his opinion — i.e., Stanley’s blood and urine alcohol counts and her physical characteristics — were set forth in detail
 
 (see, e.g., People v Samuels,
 
 302 NY 163;
 
 see generally,
 
 5 Weinstein-Korn-Miller, NY Civ Prac ¶ 4515.03, at 45-429 to 45-437;
 
 cf., Costa v 1648 Second Ave. Rest.,
 
 221 AD2d 299, 300), there was nothing in the expert’s affidavit at all from which the validity of its ultimate conclusions about Stanley’s appearance on the evening of the accident could be inferred. While the technical or scientific basis for a testifying expert’s conclusions ordinarily need not be adduced as part of the proponent’s direct case
 
 (see, e.g., Tarlowe v Metropolitan Ski Slopes,
 
 28 NY2d 410, 414;
 
 People v Crossland,
 
 9 NY2d 464;
 
 Christie’s [Intl.] v Gugliarda,
 
 65 AD2d 714, 715;
 
 Horn v State of New York,
 
 45 AD2d 799, 800; 5 Weinstein-Korn-Miller,
 
 op. cit.,
 
 at 45-437), an expert’s affidavit proffered as the sole evidence to
 
 *452
 
 defeat summary judgment must contain sufficient allegations to demonstrate that the conclusions it contains are more than mere speculation and would, if offered alone at trial,' support a verdict in the proponent’s favor.
 

 In some situations, the nature of the subject matter or the expert’s area of special skill will suffice to support the inference that the opinion is based on knowledge acquired through personal professional experience. In other situations, an expert’s affidavit may be deemed sufficiently probative to defeat summary judgment if it makes reference to outside material " 'of a kind accepted in the profession as reliable in forming a professional opinion’ ” and such reference is accompanied by evidence establishing the out-of-court material’s reliability
 
 (Hambsch v New York City Tr. Auth.,
 
 63 NY2d 723, 726).
 

 Here, the personal professional background of plaintiffs’ expert — a clinical forensic pathologist whose specialty is the performance of autopsies — is not alone sufficient to lend credence to his opinions, since individuals in his field are not ordinarily called upon to make judgments about the manifestations of intoxication in live individuals. Moreover, plaintiffs’ expert’s affidavit was devoid of any reference to a foundational scientific basis for its conclusions. No reference was made either to Dr. Oram’s own personal knowledge acquired through his practice or to studies or to other literature that might have provided the technical support for the opinion he expressed. Thus, Dr. Oram’s affidavit had no probative force and was not by itself sufficient to defeat these defendants’ motions for summary judgment
 
 (see, Caton v Doug Urban Constr. Co.,
 
 65 NY2d 909, 911;
 
 Fallon v Hannay & Son,
 
 153 AD2d 95, 101-102).
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, the appealing defendants’ respective motions for summary judgment dismissing the complaint and all cross claims against them granted and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.
 

 *
 

 There is often a considerable gap between the time the alcohol is served and the time that the blood and urine tests are administered. In recognition
 
 *451
 
 of this problem, some courts have accepted expert "relation-back” testimony, in which a forensic specialist with appropriate training uses the individual’s tested blood alcohol levels and personal physical characteristics as the bases for extrapolating what that individual’s blood alcohol level must have been at an earlier time
 
 (see, e.g., People v Ladd,
 
 224 AD2d 881, 882,
 
 affd on other grounds
 
 89 NY2d 893;
 
 People v MacDonald,
 
 227 AD2d 672,
 
 affd on other grounds
 
 89 NY2d 908). The propriety of such testimony was challenged in
 
 People v Ladd
 
 (89 NY2d 893,
 
 supra)
 
 and
 
 People v MacDonald
 
 (89 NY2d 908,
 
 supra),
 
 but we did not reach the issue because it had not been properly preserved in either case. In the present case, defendants Jack’s and Martel’s have not questioned the reliability or scientific accuracy of Dr. Oram’s "relation-back” conclusions about Stanley’s blood alcohol level at the time she was served in their establishments. Thus, as in
 
 Ladd
 
 and
 
 MacDonald,
 
 we do not reach the question of the admissibility of such evidence here.