*399
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Central to these cross appeals is the question whether there was evidence to support the jury’s verdict that defendant T.G.I. Friday’s served alcohol to a customer while he was “visibly intoxicated” (General Obligations Law § 11-101; Alcoholic Beverage Control Law § 65 [2]) and was therefore liable for fatal injuries suffered by plaintiff’s decedent in a car accident. Concluding that the verdict cannot as a matter of law be disturbed, and that there is no reversible error in any of the other issues raised by the parties, we affirm the Appellate Division order.
 

 I.
 

 Lieutenant Joseph Adamy, a member of the Town of Amherst Police Department, was killed in the early morning hours of January 27, 1990, when his police cruiser collided with a pickup truck driven by Mark Ziriakus. The accident occurred only a short time after Ziriakus had left Friday’s, a nearby bar-restaurant. In the hours preceding the incident, Ziriakus was in the company of friends at Friday’s, where he consumed a number of alcoholic beverages. In the aftermath of the accident, Ziriakus failed field sobriety tests administered by police officers at the scene and was arrested. He was ultimately convicted of driving while intoxicated and failure to yield (Vehicle and Traffic Law §§ 1141, 1192 [2], [3]).
 

 
 *400
 
 Decedent’s widow, plaintiff Candice Adamy, individually and on behalf of decedent’s estate, sued both Ziriakus and Friday’s. Plaintiff claimed that Friday’s had violated the Dram Shop Act by serving Ziriakus alcoholic beverages while he was visibly intoxicated. A jury trial resulted in a plaintiffs verdict of $5,505,474.96. The jury further determined that Ziriakus was 40% liable, Friday’s 30% liable and decedent 30% liable.
 

 Friday’s made several post-trial motions: for judgment notwithstanding the verdict or a new trial (CPLR 4404 [a]); to reduce the verdict to reflect decedent’s comparative negligence (CPLR 1411) and several collateral source payments made to plaintiff (CPLR 4545); and to structure the judgment to require only one lump-sum payment of $250,000 out of the future damages award (CPLR 5041 [b]). After Supreme Court denied these motions Friday’s appealed to the Appellate Division, which modified the judgment (231 AD2d 80). The Appellate Division denied Friday’s challenges to the verdict, but held that the trial court had erroneously awarded multiple $250,000 lump sums to plaintiff and each of decedent’s minor children, and that it had improperly failed to reduce the verdict by decedent’s own comparative fault as determined by the jury. We granted leave to both Friday’s and plaintiff, and now affirm.
 

 II.
 

 Defendant’s primary challenge to the jury verdict is that there was insufficient evidence that Ziriakus was served by its employees while he was visibly intoxicated. In seeking this relief, defendant faces the lofty hurdle of showing that “there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial”
 
 (Cohen v Hallmark Cards,
 
 45 NY2d 493, 499).
 

 General Obligations Law § 11-101 (1), known as the Dram Shop Act, makes a party who “unlawfully” sells alcohol to another person liable for injuries caused by reason of that person’s intoxication. Under Alcoholic Beverage Control Law § 65 (2), it is unlawful to furnish an alcoholic beverage to any “visibly intoxicated person.” There was evidence at trial that Ziriakus arrived at Friday’s at 10:30 p.m. on the night of the accident, had not had anything to drink earlier in the evening, imbibed a number of drinks at Friday’s in approximately a 2
 
 [1]
 
 /a hour period, left the bar shortly before the accident, and had a blood alcohol content (BAG) of 0.17 at 3:00 a.m. Noticeably absent was any eyewitness testimony that Ziriakus showed signs of intoxication that could have alerted Friday’s.
 

 
 *401
 
 As we noted in
 
 Romano v Stanley
 
 (90 NY2d 444), the failure to provide direct proof of visible intoxication in Dram Shop Act cases is not itself dispositive:
 

 “The Legislature’s use of the term ‘visible,’ however, does not create a rigid requirement that that essential element of the claim be established by direct proof in the form of testimonial evidence from someone who actually observed the allegedly intoxicated person’s demeanor at the time and place that the alcohol was served. To the contrary, as was recognized at the time section 65 (2) was amended, the' statutory language ‘[does] not preclude the introduction of circumstantial evidence to establish the visible intoxication of the customer’ ”
 
 (id.,
 
 at 450, quoting Governor’s Approval Mem, 1986 McKinney’s Session Laws of NY, at 3194).
 

 In this case, plaintiff presented several categories of circumstantial evidence. First, there was the testimony of plaintiff’s expert, Dr. Michael Baden, a forensic pathologist. Dr. Baden opined, based on Ziriakus’s 0.17 blood alcohol content at 3:00 a.m., that he consumed 12 drinks at Friday’s, and his BAG would have been at 0.20 at the time he left the bar. He further testified that if Ziriakus’s BAG was 0.20 when he left Friday’s, he would have been visibly intoxicated when last served.
 
 [1]
 

 Likening Dr. Baden’s proffered testimony to that of the plaintiffs expert in
 
 Romano,
 
 Friday’s urges that there was an insufficient foundation for Dr. Baden’s testimony, rendering his opinion purely speculative and conclusory. To be sure, in
 
 Romano,
 
 we noted that “the personal professional background of plaintiffs’ expert — a clinical forensic pathologist whose specialty is the performance of autopsies — is not alone sufficient to lend credence to his opinions, since individuals in his field are not ordinarily called upon to make judgments about the manifestations of intoxication in live individuals” (90 NY2d, at 452). Likewise, we recognized that the expert’s affidavit in
 
 Romano
 
 “was devoid of any reference to a foundational scientific basis for its conclusions. No reference was made either to [the expert’s] own personal knowledge acquired through his practice
 
 *402
 
 or to studies or to other literature that might have provided the technical support for the opinion he expressed”
 
 (id.,
 
 at 452).
 

 Friday’s reliance on
 
 Romano
 
 is misplaced. In that case, an expert’s affidavit was the only evidence offered to defeat the summary judgment motion of the vendor-defendants. In that context, we noted that “an expert’s affidavit proffered as the sole evidence to defeat summary judgment must contain sufficient allegations to demonstrate that the conclusions it contains are more than mere speculation and would, if offered alone at trial, support a verdict in the proponent’s favor”
 
 (id.,
 
 at 451-452). By contrast, when expert testimony is offered at trial, “the technical or scientific basis for a testifying expert’s conclusions ordinarily need not be adduced as part of the proponent’s direct case”
 
 (id.,
 
 at 451;
 
 see, Tarlowe v Metropolitan Ski Slopes,
 
 28 NY2d 410, 414). Rather, it falls to the opponent of the testimony to bring out weaknesses in the expert’s qualifications and foundational support on cross-examination— which is, of course, unavailable to a party seeking summary judgment, as in
 
 Romano.
 

 In this case, Dr. Baden outlined his teaching career at several educational institutions, articles he had written germane to his understanding of alcohol and its effects and his experience as a medical examiner, and Friday’s made no objection to his qualifications to testify as an expert witness. Thus, Friday’s cannot now argue that Dr. Baden’s testimony was inadmissible as a matter of law. While Friday’s did challenge Dr. Baden’s testimony and qualifications in cross-examination and again during summation, these contentions affect the weight to be accorded his views, not their admissibility. Thus, unlike an expert opinion “ ‘unencumbered by any trace of facts or data * * * [which] should be given no probative force whatsoever’ ”
 
 (Amatulli v Delhi Constr. Corp.,
 
 77 NY2d 525, 533-534, n 2), Dr. Baden’s testimony, if credited by the jury, provided a basis to conclude that Ziriakus had been served while visibly intoxicated.
 
 [2]
 

 Unlike
 
 Romano,
 
 where plaintiff’s only evidence offered to defeat summary judgment was an expert’s affidavit, here, plaintiff also introduced the testimony of several police officers
 
 *403
 
 who observed Ziriakus’s behavior and appearance at the accident scene. This testimony, if credited, demonstrated that Ziriakus displayed signs of visible intoxication, including alcohol on his breath, glassy and bloodshot eyes, and slurred speech. According to this testimony, Ziriakus was at times unresponsive to the police officers’ requests, and swayed or staggered while standing and walking. To the extent that Friday’s points to various inconsistencies in the observations of these officers, or argues that the behavior and appearance of Ziriakus was also consistent with that of an accident victim, those too were properly explored on cross-examination, argued in summation and left for the jury to weigh.
 

 Given that these observations occurred a short time after Ziriakus left Friday’s, it was not irrational for the jury, based on everyday experience and common knowledge, to find that Ziriakus was visibly intoxicated when served at Friday’s. A jury could have inferred, for example, that Ziriakus was served the drinks one at a time during his hours at Friday’s and eventually displayed signs of intoxication that should have alerted defendant’s employees.
 

 Finally, at plaintiffs request, a missing witness instruction was given regarding Doug Daly, a Friday’s bartender who was on duty the critical night and had the opportunity to serve Ziriakus. Still in the employ of Friday’s at the time of trial, Daly was not called as a witness and no explanation for his absence was given. Based on the failure to call Daly, the court permitted the jury to “draw the strongest inferences against T.G.I. Friday’s, Inc. that the opposing evidence permits.” Although not contesting the validity of the charge, Friday’s urges that even the jury instruction may not suffice as “the basis for a finding of fact on a point upon which no evidence has been received” (PJI 1:75). Of course, this presupposes Friday’s conclusion that the additional evidence of visible intoxication should be disallowed — a conclusion we reject.
 

 Thus, Dr. Baden’s testimony, taken together with the police officers’ accounts of Ziriakus’s behavior at the accident scene only a short time after he left Friday’s and the inferences the jury was permitted to draw from Friday’s failure to call Doug Daly as a witness, provided ample evidence that Ziriakus was visibly intoxicated when served at Friday’s. There was, therefore, a basis for the jury verdict in plaintiffs favor. To the extent defendant’s remaining assertions of trial error are preserved, we conclude they are without merit.
 

 
 *404
 
 III.
 

 On her cross appeal, plaintiff claims that the Appellate Division erred in holding that only one lump-sum payment of $250,000 could be made from the future damages award pursuant to CPLR 5041 (b). She urges that General Obligations Law § 11-101 permits separate causes of action for her and her dependent children, and therefore each of them should also receive a $250,000 lump-sum payment against the total future damages award. Whether plaintiff’s children could have brought their own actions entitling them to that relief (a question we do not reach), the fact remains that they did not do so. Decedent’s widow was named administratrix of his estate on April 25, 1990 and thereafter brought causes of action including wrongful death (EPTL 5-4.1) and violation of the Dram Shop Act. The children were merely distributees and not themselves plaintiffs. Thus, in the circumstances presented, the Appellate Division correctly limited the advance payments of future damages to a single lump sum.
 

 Nor is there merit in plaintiff’s argument that the verdict should not have been reduced by decedent’s 30% share of comparative fault (CPLR 1411). Plaintiff, as did the trial court, relies on a series of Appellate Division cases suggesting that, where individuals unlawfully served alcohol are themselves injured or killed as a result of the intoxication, the defendant-vendor cannot obtain contribution from either the vendee or the vendees’ survivors
 
 (see, e.g., Coughlin v Barker Ave. Assocs.,
 
 202 AD2d 622;
 
 Bartlett v Grande,
 
 103 AD2d 671;
 
 compare, Zona v Oatka Rest. & Lounge,
 
 68 NY2d 824). The rationale for these holdings is that where the person served alcohol and the decedent are one and the same, allowing contribution would enable the vendor to reduce its liability for conduct that essentially amounts to its own wrongdoing— unlawfully providing the alcohol.
 

 Although we need not address the merit of these precedents today, the concerns they raise are not implicated here. Decedent and the vendee are not the same person, and decedent’s fault is independent of the purposes of the Dram Shop Act. Here, as noted by the Appellate Division, the fault of decedent was unrelated to the consumption or provision of alcoholic beverages, but flowed from evidence that he was speeding at the time of the accident. Rather than allowing Friday’s to reduce its share of damages for its own wrongdoing, application of the comparative fault statute merely prevents
 
 *405
 
 Frida/s from paying a portion of damages for conduct it could not have prevented. Reduction of the verdict in these circumstances thus promotes the purposes and policies behind the comparative fault statute
 
 (see, Whalen v Kawasaki Motors Corp.,
 
 92 NY2d 288, 293;
 
 Arbegast v Board of Educ.,
 
 65 NY2d 161, 166-167), and in no way contravenes those of the Dram Shop Act.
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed, without costs.
 

 [1]
 

 . There having been no objection to the reliability of the relation-back testimony offered by Dr. Baden, we have no occasion to address the admissibility of such evidence (see,
 
 Romano v Stanley, supra,
 
 90 NY2d, at 450-451, n;
 
 People v Ladd,
 
 89 NY2d 893;
 
 People v MacDonald,
 
 89 NY2d 908).
 

 [2]
 

 . Friday’s claims that its own expert, Dr. Francis Michael Gengo, who testified that Ziriakus’s BAG was only 0.08 to 0.12 at the time he left Friday’s and therefore was not visibly intoxicated when served, was more believable. The Appellate Division correctly noted that this credibility determination was properly a question for the jury.