OPINION OF THE COURT
Jane S. Solomon, J.
On September 23, 1998, plaintiffs Frank Rodgers and his *800 wife Kathleen Rodgers prevailed in their claims arising from an accident Mr. Rodgers had while working on the premises of the defendant.[1] Because some future damages awarded by the jury must be paid periodically under CPLR article 50-B, 5041 et seq., a hearing thereunder was set for a date two months after the verdict, and each side was directed to submit its recommendations prior thereto.
While CPLR 5041 is intimidating, it is not, however, impossible of application. The steps set forth in CPLR 5041 require that first, under subdivision (a), adjustments necessitated by rules outside article 50-B be made. In this case several issues arose, one of which implicates the tension between judicial responsibility and official rules of practice. Once those issues were resolved, subdivision (b) and the aspect of subdivision (c) pertaining to lump-sum payments and fees (other than on periodic payments), were addressed. Finally, fees on periodic payments under subdivision (c) and items covered by subdivision (e) were fixed, so as to provide the amounts to be inserted in the judgment for (i) fees on the structured future damages, (ii) the value of the annuity contract to be provided by defendant for future damages exceeding $250,000, and (iii) the amounts of the periodic payments to which Mr. Rodgers is entitled.
This opinion provides a road map to the application of article 50-B generally, although set forth in the context of this particular case.
I.
The jury found that Mr. Rodgers was 20% comparatively negligent. It fixed amounts for past and future pain and suffering and for past lost wages and past annuity losses, and amounts for those economic losses for two years in the future. Reduced by his comparative fault, Mr. Rodgers was awarded $640,000 for past pain and suffering and $960,000 for 17 years future pain and suffering. Mrs. Rodgers was awarded $240,000 for the past, and the same. amount for the 17 years in the future.
Over his objection, each award of lost wages to Mr. Rodgers was reduced first by the percentage of comparative fault, and then, respectively, by the amounts of Social Security disability benefits received to date and by the amounts of those benefits he could, with reasonable certainty, be expected to *801 receive in the future, including future cost of living adjustments. The wage awards became $155,464 to date and $72,935 for the future.
The next issue concerned the annuity, and the responsibility of the court to assure fairness. Plaintiffs’ witnesses testified as to the manner of calculating, not only his wages, but also payments based thereon made on his behalf to an annuity fund, and both the past investment increases realized and those likely to be realized in the future on his account with the annuity fund. The jury’s annuity awards bore no relation to the testimony, or to a report prepared by one of the witnesses. However, no timely motion addressed to the verdict had been made. In its submission in advance of the hearing, defendant brought this matter to the fore. Over plaintiffs’ objection, I determined that defendant’s argument properly had to be entertained; the jury’s award was struck, and replaced by amounts readily obtainable from the report of plaintiffs’ expert. Reduced by 20%, they were $39,088.60 for the past, and $20,191.40 for the two years in the future.
II.
Defendant had two arguments pertaining to lump-sum awards of future damages. It first asserted that, because the statute is silent, the court should entertain the notion that each future lump sum — Mr. Rodgers’ first $250,000 and Mrs. Rodgers $240,000 — should be discounted. Because the statute does not provide for this possibility, it may not be done.
Relying on Adamy v Ziriakus (92 NY2d 396 [1998]), defendant then argued that both plaintiffs should share in one $250,000 lump-sum payment. In Adamy, there were two plaintiffs, Mrs. Adamy as widow, and Mrs. Adamy as administratrix; she and the decedent had five children. The Court held that the award for wrongful death (a claim assertable only by one party, the personal representative), did not permit $250,000 lump-sum payments for each child (none of whom was a party). Here, there are two parties and, while Mrs. Rodgers’ claim is derivative of that of her husband, it remains personal to her, as does her awarded damages; they may not be combined with her husband’s.
Because future wages and annuity benefits to Mr. Rodgers each were for two years, they were aggregated, and found to be 8.84% ($22,100) of his total award for future damages, with pain and suffering equal to 91.16% ($227,900). Thus, $732,100 needed to be structured over 10 years and $71,026.40 over two *802 years. These amounts also are to be used in determining the fees payable in a lump sum to counsel.
Next to be considered were the matters of litigation expenses, attorney’s fees on the lump-sum awards, and whether the court had any responsibilities in light of workers’ compensation benefits paid to Mr. Rodgers. CPLR 5041 (c) begins by stating that “[p]ayment of litigation expenses and that portion of the attorney’s fees related to past damages shall be payable in a lump sum.” Litigation expenses are not referenced in the two ensuing sentences pertaining to attorney’s fees on future damages where the court is directed to fix an amount for a lump-sum attorney’s fee on amounts to be paid periodically; defendant’s assertion that fees on the future award should be paid by Mr. Rodgers in present dollars from his immediate payments under the judgment was rejected, but the argument that expenses are not a separate amount was accepted. Accordingly, it was determined that Mr. Rodgers and Mrs. Rodgers should bear their shares of all litigation expenses from the upfront payments they receive under the judgment; it was never in dispute that each also owes counsel one third of those payments, after expenses, for fees thereon, nor was it in dispute by this point that all of Mrs. Rodgers’ award is payable upon entry of judgment. Moreover, the amount Mr. Rodgers is entitled to upon entry of judgment clearly is adequate to satisfy any lien on his award, and no further attention was given to that subject.
III.
The more intricate matters of present values and discount rates now were reached. Defendant properly asserted that the short-term awards for economic losses — the wage and annuity amount — should be examined separately from the pain and suffering amount awarded for 17 years but payable under the statute over 10 years. Because only one year of payments is both increased under subdivision (e) and discounted, the published rate in effect for one-year Treasury notes on the date of the verdict (vide “at the time of the award” [CPLR 5041 (e)]), namely 4.39% was selected.
Plaintiffs suggested that the court look to an alleged market for annuities in selecting the discount rate for the 10-year award. Doing so, as defendant argued, would ignore that subdivision (e) looks to “generally accepted actuarial practices” in respect of a discount rate, and no representation was, nor likely could be, made that an “annuities market” or its rates *803 are commonly accepted in making or valuing investments. As a result, based on the record otherwise available at the hearing, 6% was selected; that is the rounded five-year average of interest rates on five-year Treasury instruments paid on each September 23 (the date of the verdict) in 1998 and the prior four years. In distinction to the rate selected for the short-term award, an average was more suitable because the payments to Mr. Rodgers will be spread out, and the reality of market fluctuations properly is a factor in generally accepted valuation methodology for payments made over time.
The next step was to calculate, pursuant to subdivision (c), “the attorney’s fees related to the future periodically paid damages * * * based on the present value of the annuity contract purchased to provide payment of such future periodically paid damages”, which amount is to be included in the judgment and paid in a lump sum. Doing so requires close attention to the text of the statute. It also provides the foundation for addressing the required annuity contract.
Contrary to defendant’s argument, nowhere in CPLR 5041, subdivision (e) in particular, is it stated that the “future periodically paid damages” to be received by a plaintiff be reduced to present value. It only requires that the payment of the amount awarded be stretched over time, 10 years at the most for pain and suffering, and that in consideration for the loss in value to the plaintiff necessitated by the extended payout, he receive 4% interest on the second and ensuing years’ income streams. What is subjected to a present value analysis, however, is the value of those future periodic payments, one third of which represents the attorney’s fee on those damages,[2] and two thirds of which fixes the value of the annuity policy defendant is to purchase, so as to assure that plaintiff receives that stream of future periodically paid damages. The latter “present value” is inserted in the judgment against defendant, and is a portion of the sum on which interest starts to run when the judgment is entered.
This textual analysis supports the calculation method set out by Justice Gammerman of this court in a series of decisions, the most illustrative of which is Petrides v Goodgold (170 Misc 2d 770 [Sup Ct, NY County 1995]), and is consistent with that of both the Appellate Division and the Court of Appeals in Rohring v City of Niagara Falls (192 AD2d 228 [4th Dept 1993], *804 affd 84 NY2d 60 [1994]; see also, 1A NY PJI3d 1090 [1998 Supp]). It eliminates the possibility that Mr. Rodgers loses value twice, first by the fact of the deferral of payment, and then again by a discounting of those deferred payments as would occur if his deferred payments were based on the present value of the deferred stream.[3]
Moreover, defendant is incorrect when it argues that the statute does not require that the attorney’s fee on the future payments be awarded against it in advance of the receipt by plaintiff of the full value of the award. By its terms subdivisions (b) and (c) require that the court fix that item and add it to the amount payable by defendant upon entry of judgment. However, it is fixed based upon a discounted value of the future payments. That this is protective of counsel, even though some of the payments to plaintiff might abate if plaintiff dies before the period of payment passes, is a result legislatively decreed, and not a matter for judicial interpretation.
As indicated above, the attorney’s fee is based on the present value of the periodic payments to be paid to Mr. Rodgers and the gross amounts to be valued are $732,100 over 10 years and $71,026.40 over two years discounted at 6% and 4.39%, respectively, with the amount for each year payable in monthly installments “in advance”,[4] that is, at the beginning and not at the end of each month. Again respectively, the amounts for the first year of future payments are $73,210 and $35,513.20.[5] Increased at 4% starting in the second year and reduced to present value using the selected discount rates, the amounts, i.e., the present values of each item of future damages, are $652,930 and $69,500, of which one third is $217,643 and $23,167.[6] (This is the method referred to in Rohring v City of Niagara Falls [84 NY2d, supra, at 68]. Virtually the same results are reached if either'gross amount first is divided by one third and that one third is increased by 4% and then discounted. In other words, the fee can be calculated either by *805 first discounting the amounts payable over time, or first taking one third of those payments, and then discounting that third.) These amounts aggregated, $240,810, is the amount of the lump-sum attorney’s fee to be included in the judgment. Next, these same amounts are subtracted from the present value of the entire amounts of future damages ($652,930 and $69,500 above) to obtain the present value of the annuity contracts or contract to be purchased by defendant, namely $435,287 and $46,333, a total of $481,620.
The last step is to fix the amount to be paid in the statutorily required periodic manner to Mr. Rodgers. This is based on his remaining two thirds of the pre-fee undiscounted amounts, or $488,067 on account of pain and suffering and $47,351 for economic losses. Divided by the relevant number of years, the first year’s amount for the former is $48,807 and for the latter it is $23,675.50. These amounts are the basis of the terms of the annuity contract, which are set forth in detail below. The present value of the annuity contract or contracts which must secure this payment stream, and which value is to be included in the judgment, is $481,620, as set forth in the preceding paragraph.
IV.
Based on the foregoing, (a) judgment for Mr. Rodgers is to reflect $834,552.60 for past damages, $250,000 of his future damages, $240,810 as his attorney’s fee on his future payments, and $481,620 as the present value of the annuity contract or contracts defendant or its insurance carrier is to offer and guarantee, which contract or contracts shall provide that (i) payments for pain and suffering, subject to his earlier demise, are to be made monthly in advance over 10 years, with the total for the first year being $48,807, increasing by 4% each year, and (ii) payments for economic loss, also payable monthly in advance, are to equal $23,675.50 in the first year and increase by 4% in the second and last year, regardless of his survival; and (b) judgment for Mrs. Rodgers is for $480,000. The judgment shall bear interest as required by law and include costs and disbursements as taxed by the clerk.

. The third-party complaint was dismissed after trial.

. Calculating the sliding fee under article 50-A is different. (See, Taromina v Presbyterian Hosp., 171 Misc 2d 618, 619-620 [Sup Ct, NY County 1997].)

. This is the “double discounting method” referred' to by Justice Gammerman in Taromina (171 Misc 2d, supra, at 620-621; cf, Silvestri v Small-berg, 165 Misc 2d 827 [Sup Ct, NY County 1995], affd 224 AD2d 172 [1st Dept], affd 88 NY2d 1004 [1996]).

. This actuarial notion can be factored into the formula used in the program for the calculations.

. These amounts are one tenth of the 10-year payout and one half of the two-year payout.

. The present value calculations were performed using a program therefor installed by the court staff in my computer, which was used in the presence of counsel to perform and test the calculations set forth in the text.