■ Francis Legac et al., Individually and as Parents and Guardians of Matthew Legac, an Infant, Respondents, v South Glens Falls Central School District et al., Appellants. [52 NYS3d 750]—

Clark, J. Appeal from an order of the Supreme Court (Chauvin, J.), entered April 20, 2016 in Saratoga County, which denied defendants' motion for summary judgment dismissing the complaint.

On March 8, 2012, during tryouts for the South Glens Falls High School junior varsity baseball team, plaintiffs' 15-year-old

son, Matthew Legac, was struck in the face by a baseball after he unsuccessfully attempted to field a ground ball hit onto the school's hardwood gymnasium floor by the junior varsity coach, defendant Edward Potter, who was situated some 48 feet away. Plaintiffs, individually and on behalf of Legac, thereafter commenced this negligence action to recover damages for the severe injuries sustained by their son. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint on the basis that Legac had assumed the risk of being struck by a baseball. Finding that plaintiffs raised a triable issue of fact, Supreme Court denied defendants' motion, without prejudice to renewal at trial. This appeal by defendants ensued.

Where a consenting participant in an athletic or recreational activity is aware of the risks of the activity, has an appreciation of the nature of the risks and voluntarily assumes those risks, he or she "commensurately negates any duty on the part of the defendant to safeguard him or her from th[ose] risk[s]" (*Trupia v Lake George Cent. School Dist.*, 14 NY3d 392, 395 [2010]; *see Kane v North Colonie Cent. School Dist.*, 273 AD2d 526, 527 [2000]). "[B]y engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (*Morgan v State of New York*, 90 NY2d 471, 484 [1997]; *accord Anand v Kapoor*, 15 NY3d 946, 947-948 [2010]; *see Navarro v City of New York*, 87 AD3d 877, 877-878 [2011]). "[A]wareness of risk is not to be determined in a vacuum[, but is] to be assessed against the background of the skill and experience of the particular [participant]" (*Maddox v City of New York*, 66 NY2d 270, 278 [1985]; *see Morgan v State of New York*, 90 NY2d at 486; *Benitez v New York City Bd. of Educ.*, 73 NY2d 650, 657-658 [1989]). In the case of organized team sports, an educational institution's duty is to "exercise ordinary reasonable care to protect student athletes voluntarily participating in organized athletics from unassumed, concealed, or enhanced risks" (*Bukowski v Clarkson Univ.*, 19 NY3d 353, 356 [2012]; *accord Kaminer v Jericho Union Free Sch. Dist.*, 139 AD3d 1013, 1014 [2016]). Care must be exercised to "make the conditions as safe as they appear to be" (*Turcotte v Fell*, 68 NY2d 432, 439 [1986]; *accord Morgan v State of New York*, 90 NY2d at 484; *see Bukowski v Clarkson Univ.*, 19 NY3d at 357). "If the risks of the activity are fully comprehended or perfectly obvious, [the participant] has consented to them and defendant has performed its duty" (*Turcotte v Fell*, 68 NY2d at 439 [citations omitted]; *accord Bukowski v Clarkson Univ.*, 19 NY3d at 357; *Kaminer v Jericho Union Free Sch. Dist.*, 139 AD3d at 1014).

In support of their motion for summary judgment, defendants proffered evidence establishing that Legac was an experienced and knowledgeable baseball player who voluntarily assumed the risk of being struck by a ground ball. Legac testified that he was first introduced to the game of baseball at the age of five and that he continued to be engaged with the sport until the eighth grade. He asserted that he was well aware of the possibility that he could be hit by a baseball during tryouts, practices or games. In fact, Legac stated that he had previously been hit with a baseball while at bat, that he had witnessed a line drive hit a third baseman and that he had observed, on televised games, instances in which professional baseball players were hit by baseballs. He testified that it was common for infielders to field ground balls, that he had played an infield position in the past and that he had been taught in prior years how to properly field ground balls. Legac further acknowledged that it was common for baseballs to take unexpected bounces.

As for the conditions of the gymnasium, it is well settled that the doctrine of primary assumption of the risk "may encompass risks engendered by less than optimal conditions, provided that those conditions are open and obvious and that the consequently arising risks are readily appreciable" (*Roberts v Boys & Girls Republic, Inc.*, 51 AD3d 246, 248 [2008], *affd* 10 NY3d 889 [2008]; *see Bukowski v Clarkson Univ.*, 19 NY3d at 356; *Sykes v County of Erie*, 94 NY2d 912, 913 [2000]; *Maddox v City of New York*, 66 NY2d at 277-278). Here, defendants' submissions demonstrated that, prior to the accident, Legac had an adequate opportunity to observe the less than optimal conditions of the gymnasium, where tryouts had occurred on three of the four days due to weather, and how baseballs reacted to the particular flooring of the gymnasium. Legac testified that, on the second day of tryouts, he twice participated in a ground ball fielding drill and successfully fielded one of two ground balls that were hit toward him. With respect to the accident, Legac stated that, during the fourth day of tryouts, Potter conducted a drill in which each player fielded five ground balls in succession. He asserted that he was the fourth or fifth player in line for the drill and, thus, that he had observed the players ahead of him attempt to field 20 to 25 ground balls before it was his turn. He stated that many of these players had difficulty fielding the ground balls hit by Potter. According to Legac, when it was his turn, the ground ball "took an odd hop" and struck him in the face. While Legac testified that he believed that Potter was hitting the ball "too hard" and that the baseball traveled faster on the gymnasium floor than it

would have on a baseball field, such conditions were open and obvious and clearly appreciated by Legac, who had the opportunity to watch the players ahead of him complete the ground ball fielding drill and had observed the ball interact with the flooring over three days of indoor tryouts (*see Sykes v County of Erie*, 94 NY2d at 913). Inasmuch as the conditions inherent in the indoor ground ball fielding drill were readily apparent to Legac and the risk of being struck by a ball was a reasonably foreseeable consequence of engaging in that drill, we find that defendants established their prima facie entitlement to summary judgment dismissing the complaint (*see Kaminer v Jericho Union Free Sch. Dist.*, 139 AD3d at 1014-1015; *Harris v Cherry Val.-Springfield School Dist.*, 305 AD2d 964, 964-965 [2003]; *Steegmuller v Siegel*, 202 AD2d 855, 856 [1994], *lv denied* 83 NY2d 760 [1994]; *see generally Bukowski v Clarkson Univ.*, 19 NY3d at 356-358).

In opposition, plaintiffs failed to raise a triable issue of fact. Plaintiffs proffered the affidavit of John Pinkman, a purported "baseball expert," who opined that Potter had conducted the indoor ground ball fielding drill in a manner that unreasonably increased the risk level inherent in the activity. Specifically, Pinkman asserted that Potter unreasonably enhanced the risks by, among other things, conducting the drill at an unsafe distance of 48 feet, using an aluminum fungo bat and a regulation baseball and hitting the ball with too much force for an indoor drill. However, Pinkman failed to cite industry standards, scientific studies, regulations or other objective bases for his conclusory opinions. Although Pinkman stated that the distance of 60 feet 6 inches—the distance between the pitcher's mound and home plate—was the "shortest distance that would exist between a batter and a fielder during a high school baseball game," he provided no objective support for his conclusion that the shorter distance of 48 feet was unsafe. Nor did he account for situations in which infield players may field baseballs from a position closer than the pitcher's mound. Thus, in the absence of a technical or scientific basis, Pinkman's speculative and conclusory opinions lacked probative force and, therefore, were insufficient to raise a triable issue of fact and defeat defendants' motion for summary judgment (*see Grandeau v South Colonie Cent. School Dist.*, 63 AD3d 1484, 1486 [2009]; *see generally Ramos v Howard Indus., Inc.*, 10 NY3d 218, 224 [2008]; *Romano v Stanley*, 90 NY2d 444, 451-452 [1997]). Accordingly, plaintiffs' complaint must be dismissed.

McCarthy, J.P., Egan Jr. and Devine, JJ., concur.

Lynch, J. (dissenting). I respectfully dissent. The majority

has correctly stated the principles underlying the assumption of risk doctrine and I fully recognize that a voluntary participant in a sporting activity assumes the inherent risks of that sport. That said, I agree with Supreme Court that a question of fact has been raised as to whether the risks of participating in the baseball tryouts were unduly enhanced by the conditions and methods employed by the coach. The mere fact that the tryouts were conducted indoors does not sustain plaintiffs' claim. Nor is this simply a matter of utilizing the wrong equipment, i.e., an aluminum bat and hard ball. Rather, the event must be viewed in full context. Whether Matthew Legac should be charged with an awareness of the risks of participating in the tryouts must be assessed "against the background of [his] skill and experience" (*Morgan v State of New York*, 90 NY2d 471, 486 [1997] [internal quotation marks and citation omitted]; *see Maddox v City of New York*, 66 NY2d 270, 278 [1985]). Having played baseball since he was five years old, Legac was an experienced 15-year-old player, concededly aware of the inherent risk of being hit by a baseball (*see Morrisey v Haskell*, 133 AD3d 949, 949 [2015], *lv denied* 26 NY3d 919 [2016]). This tryout, however, was his first experience playing baseball in a gymnasium.

Viewing the evidence in a light most favorable to plaintiffs as the nonmoving parties (*see Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]), Legac first participated in fielding drills on the second day of tryouts. During that session, the coach, Edward Potter, and the players stood at opposite ends of the full-length basketball court, a distance of 75 feet. As described by Legac, Potter "hit [the ball] slowly . . . a lot like a dribble" for the players to field. Legac endeavored to field two balls during this session, missing one. The next fielding drill was on the fourth and final day of tryouts. This drill was conducted across the width of the basketball court, measuring 48 feet. Each player was to field five balls and Legac was fourth or fifth in line. Potter was using an aluminum fungo bat with a hard ball. Legac testified that the coach did not give any instructions or demonstration on how to field a ground ball, but acknowledged that he knew how to field a ground ball. Legac testified that, watching the players before him, they had difficulty and that only one player was able to field one ball. Legac explained that Potter "was swinging the ball as hard as he could" and confirmed that "the ball was traveling faster than it would during a baseball game." Legac's injury occurred on the first ball hit to him. He remembered getting into his stance and that the ball bounced once before striking him near his right eye.

For his part, Potter acknowledged that "you're not going to

hit the ball the same inside as you are outside. You're not going to use the same force" for two reasons: "the distance that you're standing at, one. Two, there's nothing that's slowing the ball down." Potter further explained, "We don't need to hit the ball that hard to see the skill of a player of how he's going to pick the ball up and field it." He also confirmed "that with the more force that you hit the ball with the bat, the higher th[e] ball would be after a bounce." He explained that the objective was "to hopefully get one or two hops out of it and then be able to field the ball below your waist, which is a game situation."

In my view, Potter's explanation juxtaposed against Legac's description of the actual event raises a question of fact as to whether the risks of injury were unduly enhanced by where and how this fielding drill was conducted. That the ball bounced once striking Legac at eye level is, by Potter's own testimony, a validation of Legac's testimony that Potter was hitting the ball too hard for this indoor setting. As such, it is my view that Supreme Court properly denied defendants' summary judgment motion.

Ordered that the order is reversed, on the law, with costs, motion granted, summary judgment awarded to defendants and complaint dismissed.