Secky v New Paltz Cent. Sch. Dist. (2021 NY Slip Op 04071)





Secky v New Paltz Cent. Sch. Dist.


2021 NY Slip Op 04071


Decided on June 24, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 24, 2021

531549
[*1]Joanne Secky, Individually and as Parent and Guardian of Jaxson Koebel-Secky, an Infant, Respondent,
v
New Paltz Central School District et al., Appellants.

Calendar Date:April 28, 2021

Before:Egan Jr., J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Mills Law Firm, LLP, Clifton Park (Christopher K. Mills of counsel), for appellants.
Dryer Law Offices, PLLC, Newburgh (Steven A. Kimmel, Washingtonville of counsel), for respondent.



Aarons, J.
Appeal from an order of the Supreme Court (Cahill, J.), entered May 13, 2020 in Ulster County, which denied defendants' motion for summary judgment dismissing the complaint.
Plaintiff, individually and on behalf of her son (hereinafter the child), commenced this action for alleged personal injuries sustained by the child while he was engaged in a drill during school basketball practice. Following joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint. Supreme Court denied the motion. Defendants appeal. We reverse.
"A person who voluntarily participates in a sport or recreational activity assumes the 'risks which are inherent in and arise out of the nature of the sport generally and flow from such participation'" (Lincoln v Canastota Cent. School Dist., 53 AD3d 851, 851-852 [2008], quoting Morgan v State of New York, 90 NY2d 471, 484 [1997]; see Grady v Chenango Val. Cent. Sch. Dist., 190 AD3d 1218, 1219 [2021]). The record discloses that the child, who was 14 years old at the time, and his teammates were involved in a basketball drill that did not use the boundary lines of the court. As such, the players continued playing even if the ball or player went out of bounds. During the drill, the child went beyond the court's boundary lines in order to retrieve a rebound following a missed shot. According to the child, he was approximately two to four feet from bleachers that were retracted into the wall when he touched the ball. After the child retrieved the ball, he eased up and turned to go back to the court. However, the child stated that he was bumped from behind by another player and collided with the retracted bleachers. The athletic director for defendant New Paltz Central School District testified that the drill was age appropriate for the students involved and that many drills did not use boundary lines. Defendants' expert averred in an affidavit that it was reasonable to conduct the drill without the use of typical boundary lines. In view of the foregoing, defendants satisfied their moving burden on the issue of primary assumption of risk (see Franco v 1200 Master Assn., Inc., 177 AD3d 858, 859 [2019]; Wilkes v YMCA of Greater N.Y., 68 AD3d 542, 543 [2009]; Martin v State of New York, 64 AD3d 62, 64-65 [2009], lv denied 13 NY3d 706 [2009]; Ribaudo v La Salle Inst., 45 AD3d 556, 557 [2007], lv denied 10 NY3d 717 [2008]).
Plaintiff concedes that the retracted bleachers were open and obvious and that the child was aware of their presence. She nonetheless asserts that the inherent risks were increased by the elimination of the boundary lines during the drill. We disagree. "The primary assumption of risk doctrine . . . encompasses risks involving less than optimal conditions" (Bukowski v Clarkson Univ., 19 NY3d 353, 356 [2012] [citations omitted]; see Legac v South Glens Falls Cent. Sch. Dist., 150 AD3d 1582, 1584 [2017], lv denied 30 NY3d 905 [2017]; Martin v State of New York, 64 AD3d [*2]at 64). The opinion of plaintiff's expert that the drill could have been safer by utilizing the boundary lines of the basketball court and having more space was insufficient to raise an issue of fact given that the failure to do so did not unreasonably increase the inherent risks of the drill or playing basketball (see Krzenski v Southampton Union Free Sch. Dist., 173 AD3d 725, 726 [2019]; Musante v Oceanside Union Free School Dist., 63 AD3d 806, 807 [2009], lv denied 13 NY3d 704 [2009]; Simoneau v State of New York, 248 AD2d 865, 866-867 [1998]). Plaintiff's expert likewise failed to cite to any specific industry standard violated by defendants (see Krzenski v Southampton Union Free Sch. Dist., 173 AD3d at 726). Furthermore, there is no indication in the record that the boundary lines of the basketball court acted as, or were intended to be, a safety mechanism to prevent a player's collision with the bleachers. Because plaintiff did not satisfy her burden, defendants' motion should have been granted (see Bukowski v Clarkson Univ., 19 NY3d at 358; Legac v South Glens Falls Cent. Sch. Dist., 150 AD3d at 1585).
Egan Jr., J.P., Clark and Pritzker, JJ., concur.
Reynolds Fitzgerald, J. (dissenting).
I respectfully dissent.
The "[a]pplication of the doctrine of assumption of risk is generally considered a question of fact for the jury" (Clauss v Bush, 79 AD3d 1397, 1398 [2010] [internal quotation marks, brackets and citation omitted]), and "its application must be closely circumscribed" (Trupia v Lake George Cent. School Dist., 14 NY3d 392, 395 [2010]). I believe that the undisputed facts of this case demand that the question of whether the 14-year-old child here assumed the risk of injury be resolved by a jury. It is undisputed that the child was injured while participating in a basketball drill during team practice, under the direction and supervision of his coach. It is further undisputed that the coach altered the rules governing the game for purposes of this drill, namely by eliminating the out of bounds and only calling hard fouls. These changes removed any buffer space between the playing area and the bleachers and encouraged "physical play." It is undisputed that the child was injured after being pushed into the bleachers.
"A person who [has] voluntarily participate[d] in a sport or recreational activity assumes the risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (Lincoln v Canastota Cent. School Dist., 53 AD3d 851, 851-852 [2008] [internal quotation marks and citation omitted]). Thus, the question of assumption of risk distills down to a two-prong test — voluntary participation and the nature of the risk. With regard to the first prong, I do not think it prudent for this Court to decide, as a matter of law, that a 14-year-old student athlete participating in a mandatory team practice drill at the direction of that team's coach has voluntarily participated in the [*3]activity.[FN1]
It is with the second prong, concerning the nature of the risk, where I strongly take issue with the majority decision. This is because, under the doctrine of assumption of risk, a participant will not be deemed to assume risks that have been "unreasonably enhanced" (Custodi v Town of Amherst, 20 NY3d 83, 88 [2012]). The question here then is whether the elimination of boundaries and relaxation of foul calls unreasonably enhanced the risk to the child. The majority characterizes the incident as occurring "beyond the court's boundary lines." Respectfully, this interpretation belies the very rules put in place by the coach. After all, if we view the evidence in a light most favorable to plaintiff, there were no boundary lines under the rules of this drill.[FN2] Furthermore, under normal circumstances, when a player goes out of bounds, play stops.[FN3] However, under the rules of this drill, that did not happen. Hence, any "buffer zone" between the playing area and the bleachers or walls of the gymnasium was eliminated. I disagree with the majority's assertion that there is nothing in the record to indicate that boundary lines act as a safety mechanism to prevent a collision. They are called boundary lines; and, when boundary lines are implemented as prescribed under the rules of basketball, they create, and are an integral part of, the buffer zone, which is the safety feature. The suggestion that boundary lines are devoid of safety value as they do not actually prevent impact is akin to suggesting that the double yellow lines on a roadway are not a safety feature as they do not prevent collisions. As such, whether the elimination of boundaries and the relaxation of foul calls unreasonably enhanced the risk of the drill in this situation is, in my mind, undoubtedly a question of fact to be determined by a jury.
Finally, I would deny defendants' motion on the ground that they failed to carry their initial burden so as to entitle them to summary judgment. Defendants' expert affidavit is both conclusory and speculative and, as such, insufficient to support an award of judgment as a matter of law (see Gorman v Gorman, 87 AD2d 674, 675 [1982], appeal dismissed 56 NY2d 804 [1982]). The resumÉ of defendants' expert establishes that he is a successful basketball coach, but it fails to exhibit any physical education certification. Thus, when he opines that "this rebounding drill is appropriate for players as young as 4th grade," it begs the question — on what basis and/or authority is that assertion made? Similarly, when he states that the drill is used widely by many coaches at all levels of coaching, including New York high school coaches, the questions of which coaches and what schools are unanswered.[FN4] Without citation to proper authorities, these statements are conclusory. The expert further opines that the accident could have happened during a game. This statement is both obviously speculative and irrelevant. The accident did not [*4]happen during a game. Given the conclusory and speculative nature of the affidavit, as well as the lack of any certification, I find that defendants failed to carry their initial burden and would deny the motion on that basis.
However, even assuming that the burden shifted to plaintiff to raise a material question of fact, in my opinion she did so. Plaintiff's expert, Thomas Bowler, is a certified safety expert and taught physical education for over 30 years. He testified, within a reasonable degree of professional certainty, that the removal of the boundaries eliminated the "buffer zone" needed for a player to slow down before he runs into the bleachers and walls and increases the risks involved. His report referred to several authoritative materials. And, although the majority takes issue with Bowler's failure to cite a specific safety violation per se, he does state that the removal of boundaries and resultant wall-to-wall play contradicts the National Federation of State High School Association's court and field diagram guide, which mandates that "there shall be at least three feet (preferably 10 feet) of unobstructed space outside boundaries." In my opinion, his affidavit clearly raises issues of fact. For the foregoing reasons, I would affirm Supreme Court's order denying summary judgment to defendants.
ORDERED that the order is reversed, on the law, with costs, motion granted and complaint dismissed.



Footnotes

Footnote 1: I concede, however, that we have so held in past decisions (see e.g. Grady v Chenango Val. Cent. Sch. Dist., 190 AD3d 1218, 1220 [2021]).

Footnote 2: The record reveals conflicting evidence as to whether the play was "wall-to-wall." The coach contends that it was not. However, the child testified that it was wall-to-wall, and the school's athletic director testified that the coach described it in that way shortly after the accident. As this is a motion for summary judgment, we view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference (see Gadani v Dormitory Auth. of State of N.Y., 43 AD3d 1218, 1219 [2007]).

Footnote 3: Indeed, one of the reasons given by the coach for the elimination of out of bounds in this drill was the noninterruption of play.

Footnote 4: More importantly, if the removal of the boundaries and elimination of minor fouls unreasonably enhances risk, does it matter that the drill is widely used?