■ JAMES BRANCATI et al., Respondents, v BAR-U-FARM, INC., Appellant.—Mahoney, J. Appeals (1) from an order of the Supreme Court (Williams, J.), entered March 11, 1991 in Sullivan County, which denied defendant's motion for summary judgment dismissing the complaint, and (2) from an order of said court, entered September 10, 1991 in Sullivan County, which, upon reargument, inter alia, adhered to its prior order.

During a weekend visit to Sullivan County in early March 1983, plaintiff James Brancati, a self-proclaimed expert horseman, rented a trail horse from defendant's riding establishment. Incident to the rental, Brancati signed a release form acknowledging that horses are "creature[s] capable of and

given to independent action" and absolving defendant of all but gross negligence in connection with the rental. Defendant's trail guide selected a horse for Brancati and accompanied him on the trail ride on defendant's property which began with the horses walking. When the guide gave the "trot" command, the horse Brancati was riding suddenly fell, rolling over onto its left side and injuring Brancati. It is uncontroverted that the horse was unshod at the time of the accident.

Brancati and his wife then commenced this action alleging that defendant was negligent in failing to shoe the horse with proper horseshoes to prevent it from losing its footing. In its answer, defendant raised, *inter alia,* the defenses of release and express assumption of the risk. Following completion of discovery, defendant moved for summary judgment dismissing the complaint. Three bases for the relief were asserted: (1) the release which contained an express assumption of the risk was valid and enforceable and precluded recovery, (2) defendant was not negligent in failing to shoe the horse, and (3) there was no evidence that lack of horseshoes was the proximate cause of the accident. In support of the second theory defendant submitted an affidavit of a veterinary expert, who opined that horseshoes are not necessary and may be dangerous when worn in the winter months because mud and snow tend to ball up in the sole of the hoof causing an unstable base and resulting in increased stumbling and sliding. The expert further asserted that defendant's practice of removing horseshoes in the winter months was standard practice in the industry and that defendant was not negligent. To support the lack of causation, defendant relied upon the deposition testimony of the trail guide who indicated that upon inspection of the trail surface immediately after the accident, he noticed no markings which would indicate that the horse's hooves slipped causing it to fall.

In response, plaintiffs asserted that the release fell squarely within the ambit of General Obligations Law § 5-326 and thus was void as against public policy. On the issues of negligence and proximate causation, plaintiffs focused upon the conflicting accounts of the trail surface conditions among Brancati, defendant's president and the trail guide.[1] In addition, plain-

1. Brancati testified at his deposition that the air temperature was 40 to 45 degrees at the time of the accident and the upper surface of the trail was melting and muddy but icy underneath. Defendant's president, who arrived at the scene shortly after the accident, stated that the surface was soft and

tiffs submitted an expert affidavit from an experienced horse-woman who opined that it is not a universally accepted practice to remove horseshoes during the winter; while they can safely be removed when the surface remains soft or snowy, it is inappropriate to remove them where a horse is subjected to hard surfaces and possible icy or slippery conditions. According to the expert, in such situations the horse should be fitted with shoes designed for winter use, i.e., shoes with heels and/or spots of borium on the shoe to grip and dig into icy conditions or hard surfaces. The expert further opined that based upon a review of National Weather Service records for the day of the accident and several days prior, which revealed consistent below freezing temperatures except for several hours on the day of the accident, coupled with the sudden, unexplained nature of the accident, the horse's fall was caused by its slipping on an underlying hard or icy surface and that the failure of proper shoes was a contributing factor.

Supreme Court denied defendant's motion concluding that issues of fact existed regarding the surface conditions of the trail at the time of the accident, which issues had to be resolved before it could be determined whether horseshoes were indicated. The court adhered to this determination upon reargument, but granted plaintiffs' cross motion to dismiss defendant's release and express assumption of the risk defenses. Defendant appeals from both orders.

Initially, we reject defendant's contention that General Obligations Law § 5-326 does not apply to this release. That section provides, in pertinent part, as follows: "Every * * * agreement * * * in or in connection with * * * any contract * * * ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner * * * receives a fee or other compensation for the use of such facilities, which exempts the said owner * * * from liability for damages caused by or resulting from the negligence of the owner * * * shall be deemed to be void as against public policy and wholly unenforceable" (General Obligations Law § 5-326). It cannot seriously be doubted that a riding stable of the sort involved herein is a "place of amusement or recreation" within the meaning of the statute (cf., *DiMaria v*

a little moist. The trail guide indicated that it was soft, not muddy, but hard 6 to 7 inches under.

*Coordinated Ranches,* 138 AD2d 445, 446). Defendant's argument that General Obligations Law § 5-326 is intended to apply only to acts conducted in a controlled environment is belied by prior caselaw wherein the statute has been extended to situations involving outdoor amusement activities *(see, Blanc v Windham Mtn. Club,* 115 Misc 2d 404, *affd* 92 AD2d 529). Because it is clear that Brancati paid a fee for the horse rental and trail ride, Supreme Court properly dismissed defendant's defense based upon the release.[2]

Turning now to defendant's summary judgment motion, it is well established that on such a motion, to the extent that the movant has satisfied its initial burden of establishing the claim or defense "sufficiently to warrant the court as a matter of law in directing judgment in [its] favor" (CPLR 3212 [b]), the burden shifts to the opponent to "show facts sufficient to require a trial of any issue of fact" (CPLR 3212 [b]). Assuming that defendant's submissions satisfied its initial burden, in our view the evidence submitted by plaintiffs established the presence of factual issues requiring trial. As set forth in the affidavit of plaintiffs' expert, the necessity for horseshoes for trail horses depends upon the trail conditions, winter shoes being necessary in situations where it is likely that hard surfaces or icy and/or slippery conditions will be encountered. Despite defendant's attempts to downplay the dispute regarding the conditions, the testimony of Brancati, defendant's president and the trail guide *do indeed* conflict on this issue. While defendant's president claimed the entire surface was soft, both Brancati and the trail guide noted the presence of a hard or icy surface under the initial layer of mud. The introduction of weather data interjects further factual issues in this regard. Nor do we believe that the element of causation is lacking as a matter of law. The conflicting expert testimony regarding the role horseshoes play in increasing a horse's traction and whether the lack of horseshoes caused this accident present a classic factual issue of causation. Finally, we also agree that Brancati's lack of awareness that the horse was unshod and questions regarding his awareness of the trail conditions before embarking combine to create a triable issue of fact regarding his implied assumption of the risk *(see, Arbegast v Board of Educ.,* 65 NY2d 161; *Hoffman v*

2. We likewise are in agreement with Supreme Court's dismissal of defendant's express assumption of the risk defense. It is now clear that a release found to be unenforceable under General Obligations Law § 5-326 cannot be used to establish one's express assumption of the risk *(Owen v R.J.S. Safety Equip.,* 169 AD2d 150, 155, *affd* 79 NY2d 967).

*City of New York,* 172 AD2d 716, *lv denied* 78 NY2d 859; *Owen v R.J.S. Safety Equip.,* 169 AD2d 150, 155, *affd* 79 NY2d 967).

Weiss, P. J., Crew III, Casey and Harvey, JJ., concur. Ordered that the orders are affirmed, with costs.