■ J. RICHARD JOHNSON, Respondent, v BERNARD WAUGH et al., Defendants, and R. THOMAS SUAREZ, Appellant. [663 NYS2d 928] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Tait, Jr., J.), entered July 31, 1996 in Madison County, upon a decision of the court in favor of plaintiff.

This action stems from an accident that occurred on May 27, 1994 at approximately 10:45 A.M. when a triaxle dump truck driven by plaintiff collided with Keystone Everett, a standardbred race horse who escaped from a nearby farm while being unloaded and ran into the path of the truck, resulting in the horse's death. Prior to the collision, plaintiff was proceeding below the speed limit in a westerly direction on Ottman Road in the Town of Vernon, Oneida County, and, at the same time, the horse was being removed from a trailer at a farm owned by defendant R. Thomas Suarez by his trainer and part-owner, defendant Bernard Waugh. The trailer was parked approximately 40 feet from the barn and 20 to 25 feet from the road. As Waugh was leading the horse from the trailer, it unexpectedly "spooked" and bolted into the road. The record indicates that the horse had a generally "docile" temperament and there had been no previous problems in loading or unloading him from his trailer either at the farm or at the busy racetrack.

Plaintiff commenced this action against three of the purported owners of the horse, Waugh, Suarez and defendant Paul

Nower,[1] seeking damages to his truck and loss of use. Waugh and Nower counterclaimed for damages as a result of the death of the horse. Following a nonjury trial, Supreme Court found in favor of plaintiff holding defendants to be jointly and severally liable. The appeal by Suarez (hereinafter defendant) is now before us.

Initially, we reject defendant's argument that he was not a proper party in this action. Supreme Court appropriately found on this record that defendant was a joint owner of the horse and that defendant, the Nowers and Waugh were all engaged in a joint venture with respect to the horse. The uncontradicted record evidence established that, consistent with their past practice with other horses, defendants and Pauline Nower considered themselves joint owners of Keystone Everett and had every intention of pooling their joint resources in the way of money, provisions and talent to foster him as a race horse and to share jointly any winnings. The fact that all the owners of the horse were not listed on his registration is not dispositive on the issue of ownership in light of the rebuttal proof (see generally, Salisbury v Smith, 115 AD2d 840, 841),[2] nor is the fact that no formal partnership agreement existed conclusive as to whether a joint venture existed (see, 16 NY Jur 2d, Business Relationships, § 1943, at 252). Thus, defendant's claim that he was not a proper party has no merit.

Nevertheless, turning to the issue of negligence, we agree with defendant that the verdict was against the weight of the evidence. In his direct case, plaintiff presented one expert witness, Stephen MacKenzie, a college professor who taught courses in equine behavior and the trailering of horses. MacKenzie opined that Waugh's decision to unload the horse 20 to 25 feet from the roadway deviated from what he would consider to be "prudent procedure". However, Supreme Court rejected that opinion, finding "no evidence of negligence with respect to [Waugh's] manner of unloading the horse". With respect to the proximity of the road, Supreme Court concluded that the "mere presence of nearby traffic" was insufficient to support an inference of negligence in light of testimony that "there were trucks

1. Although there is no dispute that Paul Nower's wife, Pauline, was also a co-owner of the horse, she was not named as a defendant in the complaint.

2. Specifically, the record contains proof indicating that the United States Trotting Association would only recognize the Nowers as the owners of the horse based on the certificate of registration and we recognize that this evidence in certain cases could be dispositive. Here, however, defendants have all *admitted* that each owned a portion of the horse and this proof is sufficient to rebut any inference of nonownership on the part of Waugh and defendant which was raised by the absence of their names on the certificate.

and other vehicles on the race track where the horse was training and he was accustomed to vehicular traffic". Supreme Court went on to find negligence on the part of Waugh, however, for failing to back the trailer through an opening in a fenced enclosure, the "laneway", a procedure that Waugh testified he has consistently used to unload horses since the accident.[3]

Notably, "[a] prima facie case of negligence can be made against the owner of a [horse] wandering unattended on a road, which causes damages to a plaintiff's vehicle or person. That presumption is rebuttable upon proof that the animal's presence on the highway was not caused by the owner's negligence" (*Jones v Chalaire*, 85 Misc 2d 767, 768; *see, Young v Wyman*, 159 AD2d 792, 793, *affd* 76 NY2d 1009; *Loeffler v Rogers*, 136 AD2d 824). In other words, "liability for damages caused by stray horses cannot be imposed unless the [owner's] conduct in some way contributes to the injury" (*Jones v Chalaire, supra,* at 768; *see, Alioto v Denisiuk*, 23 Misc 2d 292, 293; *Allen v Stewart*, 190 Misc 223, 225).

Here, it is our view that the credible evidence presented by plaintiff does not support the finding of negligence by Supreme Court. As previously indicated, Supreme Court specifically found that Waugh was not negligent in unloading the horse but imposed liability by finding that Waugh was negligent in not using the laneway. With respect to the laneway issue, plaintiff put no evidence into the record, expert or otherwise, that it was the standard practice in the horsing industry to back trailers into fenced enclosures when unloading horses (*cf., Brancati v Bar-U-Farm*, 183 AD2d 1027, 1028). MacKenzie did not mention the use of laneways in his testimony and there was no proof presented by plaintiff as to the particulars of this laneway or the specific advantages to using laneways for the unloading of horses. In fact, the only admissible proof as to the standard practice with respect to laneways was from the defense witnesses, one of whom, Lon Rosenfeld, a horse trainer who had unloaded horses at defendant's farm several times, testified that Waugh's unloading of the horse in the location chosen was appropriate and consistent with industry practice.[4]

In a nonjury case, "this court is permitted to weigh the rela-

---

**3.** While there is no question that the laneway was in existence at the time of the subject accident, the evidence indicates that, previous to this time, it was seldom if ever used for the purpose of unloading horses.

**4.** While Rosenfeld conceded that unloading a horse in an enclosed area would likely lessen the chance that the horse would escape into the road, he opined that it was not a prudent practice to unload a horse by backing into a laneway, where it would be a bit tight, since this could require a lot of forward and backward motion that would rock the horse and create stress.

tive probative force of conflicting testimony and strength of conflicting inferences and, on that basis, make alternative findings" (*Bestway Constr. v Broome County*, 107 AD2d 897, 901, *appeal dismissed* 66 NY2d 758; *see, Jacobs v Facilities Dev. Corp.*, 118 AD2d 971, 973, *lv denied* 68 NY2d 603). Since the proof presented by plaintiff did not support a conclusion that Waugh was negligent by not using the laneway, we must conclude that judgment was improperly granted in favor of plaintiff on this issue.

The remaining arguments raised by the parties have been examined and found to be either without merit or rendered academic by the foregoing disposition.

Mercure, White, Peters and Carpinello, JJ., concur. Ordered that the judgment is reversed, on the law, with costs, and complaint dismissed against defendant R. Thomas Suarez.