[809 NYS2d 526]

Gobin Joseph et al., Respondents, v New York Racing Association, Inc., Doing Business as Belmont Race Track, et al., Appellants.

Second Department, February 7, 2006

APPEARANCES OF COUNSEL

*Bee Ready Fishbein Hatter & Donovan, LLP*, Mineola (*Joshua M. Jemal* of counsel), for appellants.

*Neil H. Greenberg & Associates, P.C.*, Westbury (*Justin M. Reilly* of counsel), for respondents.

## OPINION OF THE COURT

MASTRO, J.

This appeal presents us with an opportunity to discuss the principles underlying the doctrine of primary assumption of risk, and to apply those principles to the facts in the matter before us. Upon doing so, we must conclude that the plaintiffs' action to recover damages for personal injuries, based upon the injured plaintiff's fall from a horse on January 23, 1999, at Belmont Race Track, is barred by that doctrine.

As revealed during his lengthy deposition, the plaintiff Gobin Joseph (hereinafter the plaintiff) was a highly skilled and experienced professional horse exercise rider, having worked in that capacity from 1972 to 1999. He previously exercised horses outside in the rain, and had fallen from horses on various occasions, some of those falls being attributable to riding on wet, muddy tracks. Before his accident, the plaintiff exercised the subject horse approximately three times per week for "a couple of months" at the Belmont Race Track facility owned by the defendant New York Racing Association, Inc., doing business as Belmont Race Track (hereinafter NYRA). On the morning in question, the plaintiff was instructed to take the horse to the "jogging barn" on NYRA's premises in order to exercise it. It had rained the previous day, and the jogging barn generally was used during inclement weather. Upon arriving at the barn, the plaintiff observed several puddles on the ground beneath open windows at the far side of the indoor track. The puddles were "a couple of feet" in size. A fellow rider allegedly warned the plaintiff that the barn was not "maintained." The plaintiff proceeded to take the horse for a slow jog through a complete lap around the indoor track. As he did so, he observed a wet area adjacent to the puddles which covered approximately one half of the 16-foot-wide path. His horse slipped on the wet area, but did not fall. Given these circumstances, the plaintiff determined that the area was not acceptable or was dangerous

to ride on. Therefore, he decided to go around the track only once more rather than a total of four times as he previously had been instructed. When pointedly asked at his deposition why he decided to take the horse around for a second lap when he knew it would be dangerous to do so, the plaintiff merely responded that he was "just doing what my trainer told me to do," although the trainer was not present at the jogging barn and the plaintiff had already decided not to follow the trainer's earlier directions by taking the horse around the track twice rather than four times. On the second pass through the same area, the horse once again slipped in the same spot. Both the horse and the plaintiff fell to the ground, with the plaintiff sustaining injuries.

The plaintiffs subsequently commenced this action by filing a summons and complaint dated October 29, 2001, which were amended on or about October 30, 2002, setting forth causes of action to recover damages for personal injuries and loss of services. The amended complaint alleged, inter alia, that NYRA was negligent in permitting the indoor jogging track to be in a condition which was "unkempt, wet, soggy and unsafe for the exercising of horses." Issue was joined by the service of the defendants' answer, which asserted, inter alia, the affirmative defense of assumption of risk.

Following extensive discovery, including the taking of the plaintiff's deposition, the defendants moved for summary judgment dismissing the complaint on several grounds, including primary assumption of risk. The defendants contended that by electing to take the horse around the track for a second lap despite his actual awareness of the wet and muddy conditions, the plaintiff, an experienced rider, voluntarily assumed the risk of injury which those conditions presented.

The plaintiffs opposed the motion, arguing that the condition of the indoor track posed unreasonably increased risks which may not have been assumed by the plaintiff's mere act of engaging in the activity of horseback riding. Moreover, the plaintiff submitted his own affidavit in which he suggested, for the first time in the case, that his ability to exit the jogging barn after the first lap may have been impeded by the presence of other horses around him and by the fact that an NYRA security guard controlled the entry and exit of riders. Nevertheless, he admitted that "[a]fter I passed the areas of standing water I came upon the security guard and decided I would slowly take the horse around for one more lap and then go and tell [the trainer]

I did two laps instead of four because the exercise barn was not in the proper condition for exercising horses."

The Supreme Court, Queens County, denied the defendants' motion for summary judgment. While acknowledging that the plaintiff was an experienced rider who voluntarily jogged the horse around the indoor track on the day in question, the court reasoned that the plaintiff may not have been fully aware of, and thus may not have assumed, the risks posed by the existence of the wet and muddy condition on a portion of the track. We reverse.

It is difficult to imagine a more compelling set of facts for the application of the doctrine of primary assumption of risk. That doctrine provides that a voluntary participant in a sporting or recreational activity "consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (*Morgan v State of New York,* 90 NY2d 471, 484 [1997]). "This includes those risks associated with the construction of the playing surface *and any open and obvious condition on it* (*see Sykes v County of Erie,* 94 NY2d 912; *Maddox v City of New York,* 66 NY2d 270)" (*Welch v Board of Educ. of City of N.Y.,* 272 AD2d 469, 469 [2000] [emphasis supplied]). Moreover, it is not necessary to the application of the doctrine that the injured plaintiff may have foreseen the exact manner in which the injury occurred "so long as he or she is aware of the potential for injury of the mechanism from which the injury results" (*Maddox v City of New York,* 66 NY2d 270, 278 [1985]). Of course, awareness of the risk is "to be assessed against the background of the skill and experience of the particular plaintiff" (*id.; see Morgan v State of New York, supra* at 486). Additionally, while participants in such an activity are not deemed to have assumed the risks of reckless or intentional conduct or concealed or unreasonably increased risk (*see Morgan v State of New York, supra* at 485), "[i]f the risks of the activity are fully comprehended or perfectly obvious, [the] plaintiff has consented to them and [the] defendant has performed its duty" by making the conditions as safe as they appear to be (*Turcotte v Fell,* 68 NY2d 432, 439 [1986]; *see Marshall v City of New Rochelle,* 15 AD3d 456 [2005]; *Restaino v Yonkers Bd. of Educ.,* 13 AD3d 432 [2004]; *Dobert v State of New York,* 8 AD3d 873 [2004]; *Vecchione v Middle Country Cent. School Dist.,* 300 AD2d 471 [2002]; *Verro v New York Racing Assn.,* 142 AD2d 396 [1989]).

Applying the foregoing principles to the facts of this case, it is clear that the plaintiff assumed the risk of falling from his horse

by consciously electing to proceed around the track a second time despite his conceded awareness of the danger posed by the wet area. Indeed, the plaintiff had some 27 years of experience as an exercise rider, knew the dangers of riding on wet and muddy tracks, and had even fallen in the past due to such adverse track conditions. Moreover, upon entering the jogging barn, he saw puddles at the far side of the track, and a fellow rider allegedly warned him that the track had not been maintained. The plaintiff then jogged his mount around the track, observing at close proximity the puddles and a larger wet area surrounding them. As he jogged his horse through this area, the horse slipped and stumbled, and the plaintiff considered the condition unacceptable and dangerous. In fact, he considered the situation so unsafe that he decided to complete only two laps instead of four as the trainer had directed. The puddles and the wet area, while conditions not common to an indoor track, were certainly open and obvious, and were actually observed by the plaintiff during the first lap. Moreover, the plaintiff candidly admitted that he appreciated the risks associated with the conditions before electing to proceed through a second lap. He even experienced the danger firsthand when his horse slipped while jogging around the track the first time. Under these circumstances, the plaintiff clearly assumed the risks associated with riding through the wet portion of the track a second time, and NYRA discharged its duty of care by making the track as safe as it appeared to be.

The foregoing conclusion is compelled by the decision in *Turcotte v Fell* (*supra*). There, a professional jockey was injured when he fell from his horse during a race. He commenced an action against NYRA and others, alleging that NYRA was negligent in "overwatering" (*id.* at 443) the main track and causing an unsafe "cupping" (*id.*) condition whereby the wet track surface tended to adhere to the underside of the horse's hooves. The Court of Appeals dismissed the complaint insofar as asserted against NYRA based on assumption of risk, noting that from past races, the jockey was generally familiar with cupping conditions and was well aware of the dangers they posed. The Court of Appeals found that this general knowledge, combined with the jockey's participation in three prior races at the same track on the day of his injury and his ability to observe the condition of the track before his final race, demonstrated that he had accepted the risk of injury in racing on the track.

A similar result was obtained in *Morlock v Town of N. Hempstead* (12 AD3d 652 [2004]). There, the infant plaintiff was

injured while playing street hockey on a cement rink owned by the defendant when his hockey stick became caught in a crack in the playing surface of the rink. The defendant moved for summary judgment on the ground of primary assumption of risk, and the infant plaintiff opposed the motion by contending that he did not assume the risks posed by the defects in the playing surface and that his tender age raised an issue of fact as to whether he could even appreciate those risks. We disagreed and awarded summary judgment to the defendant, initially observing that the primary assumption of risk doctrine "encompasses risks associated with the construction of the playing surface" (*id.* at 652). After noting that the infant plaintiff testified that he was aware of the defects and had even tripped on one of the cracks on a previous occasion, we found that "[his] decision to continue playing on the allegedly defective rink constituted an assumption of the risk," which included "the risk of encountering cracks and holes in the surface of a cement rink" (*id.* at 653). We further reasoned that the infant plaintiff's level of experience negated his claim that he was unable to comprehend the dangers presented by the playing surface, noting that his testimony at a hearing pursuant to General Municipal Law § 50-h indicated that "he was an experienced rollerblader and street hockey player who was very familiar with the rink conditions at issue" and therefore "it could not be said that the infant plaintiff failed to appreciate the risk presented by the cracked surface of the rink" (*id.* at 653).

Also instructive is the decision of the Appellate Division, Third Department, in *Cruz v State of New York* (1 AD3d 747 [2003]). In that case, the claimant, a prison inmate, was injured while playing a game of paddleball on one of several paved courts in a state correctional facility. The evidence revealed that several months earlier, an area between two of the courts was excavated in order to repair a broken pipeline, and the excavation was filled with soil thereafter but was not repaved. The claimant, an avid and experienced paddleball player who made frequent use of the courts, ran to retrieve an errant ball and stumbled on the unpaved area, sustaining an injury. The Third Department affirmed the dismissal of the claim, focusing on the open and obvious nature of the unpaved area and the claimant's admission that he was well aware of its existence and avoided the area when possible. In words equally applicable to the case at bar, the Court observed: "[i]nasmuch as claimant acknowledged his appreciation of the defect complained of and his

awareness of a risk of injury by reason of it, he must be deemed to have voluntarily assumed the risk that he might encounter that defect while [engaging in the activity]" (*id.* at 748).

The above cases illustrate the rule that when an experienced athlete such as the plaintiff herein is aware of the existence of a particular condition on the premises where the activity is to be performed, and actually appreciates or should reasonably appreciate the potential danger it poses, yet participates in the activity despite this awareness, he or she must be deemed to have assumed the risk of injury which flows therefrom. Since the situation presented at bar falls squarely within this rule, the defendants are entitled to summary judgment dismissing the complaint (*see Marcano v City of New York,* 99 NY2d 548, 549 [2002] ["(p)laintiff assumed the risk of injury when he swung on, and subsequently fell off, an exercise apparatus constructed over a concrete floor"]; *Dobert v State of New York, supra* at 874 [plaintiff bicyclist assumed risk of injury from slight depression in roadway which she acknowledged was "readily observable"]; *LaSalvia v City of New York,* 305 AD2d 267, 267 [2003] ["plaintiff assumed the risks inherent in the schoolyard touch football game, including any obvious risk posed by the irregular playing surface," the defect in which was "plainly visible"]; *Clements v Skate 9H Realty,* 277 AD2d 614, 615 [2000] ["(h)aving elected to continue skating despite the open and obvious condition of the skating surface, plaintiff must be deemed to have assumed the obvious risk created by that condition"]; *Verro v New York Racing Assn., supra* at 399 [plaintiff, an experienced jockey who had ridden on the subject track previously, assumed the risks posed by various features of the track which allegedly caused his accident, since all of those risks were " 'fully comprehended or perfectly obvious' "]).

The plaintiffs' heavy reliance upon *Siegel v City of New York* (90 NY2d 471 [1997]) is misplaced, as that case is factually distinguishable from the instant dispute. In *Siegel,* the plaintiff, a recreational tennis player, was injured when his foot became entangled in a torn safety net which was adjacent to the court upon which he was playing and was used to separate that tennis court from another. Significantly, the net was near, but not part of, the court, and was designed as a safety feature to keep balls and players from traveling into the adjacent court. As such, the Court of Appeals held that such a damaged or dangerous net—or any other defective safety feature or property defect—would not necessarily constitute an inherent risk as-

sumed by a player merely by reason of engaging in the sporting activity because it was not "an 'inherent' part of the game of tennis in and of itself" (*Siegel v City of New York, supra* at 488). Conversely, in the matter before us, the allegedly defective condition was part of the track itself rather than an off-field safety device, it was open and obvious to the plaintiff, and it posed risks which the plaintiff acknowledged he understood and appreciated. Accordingly, it constituted a risk voluntarily assumed by the plaintiff, and the attempt to broaden the holding in *Siegel* to encompass the facts of the instant case is unpersuasive.

Indeed, we previously had occasion to distinguish the facts in *Siegel* from a matter similar to that at bar. In *Cevetillo v Town of Mount Pleasant* (262 AD2d 517 [1999]), the plaintiff was injured during an outdoor tennis lesson on the municipal defendant's court due to a crack in the playing surface. We affirmed an order granting summary judgment to the defendants, invoking the familiar principle that a participant in a sport assumes the risks posed by the open and obvious defects in the playing field, including the "obviously cracked tennis court" in that case (*id.* at 518). We then noted that *Siegel* described "[t]he only exception to the rule," to wit—"that faulty safety features of the playing field, not directly used in playing the game, are 'not automatically an inherent risk of [the] sport as a matter of law' for purposes of summary judgment" (*Cevetillo v Town of Mount Pleasant, supra* at 518, quoting *Siegel v City of New York, supra* at 488). Since the tennis court in *Cevetillo* was directly used by the injured plaintiff as the playing field and contained no concealed or unreasonably increased risks, the general rule, rather than the exception set forth in *Siegel*, applied. The case at bar is even more compelling than the situation in *Cevetillo*, since the instant plaintiff was a more experienced participant, and he actually observed the condition and appreciated the risk associated with it before electing to continue the activity.

The other cases upon which the plaintiffs rely are similarly inapposite. For example, in *Irish v Deep Hollow* (251 AD2d 293 [1998]), the plaintiff, a novice recreational horseback rider, was riding a horse at a ranch with a group of friends. After expressing concerns regarding her inexperience to the trail guide, she was assured that the horses would be kept to a walking pace. However, the guide subsequently increased the riding pace to a canter, causing the plaintiff to fall and sustain an injury. On

those facts, we determined that a triable issue existed regarding whether the plaintiff had assumed the increased risk of injury from riding at the faster pace when she had been led to believe that a slower pace would be maintained. As the plaintiff in the instant case was an experienced, professional rider who was acutely aware of the danger of riding on the wet and muddy condition which he had observed, we find no factual similarity between *Irish* and the case at bar.

Likewise, in *Warren v Town of Hempstead* (246 AD2d 536 [1998]), the plaintiff was injured when he tripped on a crack while playing basketball at a public park. Although he was generally aware of the cracks in the playing surface, he raised an issue of fact with regard to assumption of risk by presenting expert evidence that the nature and extent of the cracks had been concealed by the property owner through the application of a sealant which disguised their depth and appearance but did not make them safer. In *Weller v Colleges of the Senecas* (217 AD2d 280 [1995]), a student riding a bicycle at night on a college campus pathway was injured when his wheel struck a tree root. Since the root was not an inherent feature of such a pathway and the student did not observe it until the accident, he was held not to have assumed the risk that he might strike it. Similarly, in *Brancati v Bar-U-Farm, Inc.* (183 AD2d 1027 [1992]), an experienced horseback rider was injured after an unshod horse which he had rented suddenly fell while traveling along a trail with which the rider had no prior familiarity. A triable issue of fact as to assumption of risk was found based on the rider's lack of awareness of the trail conditions and of the unshod condition of the horse. None of these three cases affords the instant plaintiffs any solace, since there is no evidence of a concealed risk of harm in this case, and the plaintiff at bar was fully aware of the condition and of the danger which it posed.

Furthermore, in *Owen v R.J.S. Safety Equip.* (79 NY2d 967 [1992]), *Lamey v Foley* (188 AD2d 157 [1993]), and *Cole v New York Racing Assn.* (24 AD2d 993 [1965], *affd* 17 NY2d 761 [1966]), the plaintiffs presented evidence that the accidents arose from track modifications which increased the risk of injury and which were contrary to prevailing industry standards, and there was no evidence that the injured parties were aware of the dangers they presented. There has been no similar evidentiary showing in the case at bar. Moreover, the plaintiff conceded that he continued to ride his horse around the track despite being aware of the dangers created by the wet condition, a com-

pelling circumstance which serves to distinguish this matter from all of the foregoing decisions.

Finally, it is of no small moment that only after the defendants moved for summary judgment did the plaintiff submit an affidavit suggesting, for the first time, that he could not leave the jogging barn following the initial lap because an NYRA security guard controlled when riders could enter and exit the barn. This newfound explanation for the plaintiff's decision to ride a second lap was directly contradicted by his own deposition testimony that he voluntarily elected to take another lap despite his awareness of the condition and his appreciation of the risks it engendered. The explanation was clearly designed to raise a feigned factual issue in the hope of avoiding the consequences of his earlier deposition testimony (*see Semple v Sterling Estates,* 300 AD2d 297 [2002]; *Regina v Friedman,* 272 AD2d 461 [2000]). Such efforts have routinely been rejected by the courts, and the plaintiff's contrived affidavit cannot defeat the defendants' demonstrated right to summary judgment (*see Stancil v Supermarkets Gen.,* 16 AD3d 402 [2005]; *Appell v State Farm Ins. Co.,* 292 AD2d 407 [2002]; *Hernandez v Seven Fried Food,* 292 AD2d 343 [2002]; *Marcelle v New York City Tr. Auth.,* 289 AD2d 459 [2001]).

Since the defendants established their entitlement to judgment as a matter of law based on the doctrine of primary assumption of risk, and the plaintiff failed to raise a triable issue of fact in opposition to the motion, the defendants should have been awarded summary judgment dismissing the complaint (*see Turcotte v Fell, supra*). Thus, the order is reversed, the motion is granted, and the complaint is dismissed.

RITTER, J.P., LUCIANO and SKELOS, JJ., concur.

Ordered that the order is reversed, on the law, with costs, the motion is granted, and the complaint is dismissed.