Saddlemire v Hunsdon (2022 NY Slip Op 00918)





Saddlemire v Hunsdon


2022 NY Slip Op 00918


Decided on February 10, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 10, 2022

532527
[*1]Robert Saddlemire et al., Plaintiffs,
v
Simeon Hunsdon et al., Defendants and Third-Party Plaintiffs-Appellants; Gary Fisher et al., Third-Party Defendants- Respondents.

Calendar Date:December 16, 2021

Before:Garry, P.J., Lynch, Aarons and Reynolds Fitzgerald, JJ.

Brennan & White, LLP, Queensbury (William J. White of counsel), for defendants and third-party plaintiffs-appellants.
Gozigian, Washburn & Clinton, Cooperstown (E.W. Garo Gozigian of counsel), for Gary Fisher and another, third-party defendants-respondents.
Smith, Dominelli & Guetti, LLC, Albany (Paul J. Campito of counsel), for Consetta Sucese, third-party defendant-respondent.



Reynolds Fitzgerald, J.
Appeal from an order of the Supreme Court (Auffredou, J.), entered May 14, 2020 in Washington County, which, among other things, granted third-party defendants' motions for summary judgment dismissing the third-party complaint.
On June 12, 2017, two horses, Car-Lins Two by Too (hereafter Car-Lins) and Determined Desire (hereafter Dee), were being boarded at a horse farm owned and operated by defendants. At approximately 10:00 p.m. that evening, a passerby found
Car-Lins and Dee on or near Route 197 in the Town of Fort Edward, Washington County and notified defendants, who attempted to retrieve them. Before they could corral the horses, plaintiffs, who were riding on a motorcycle westbound on Route 197, collided with Dee. Plaintiffs commenced this negligence action against defendants, who, in turn, commenced a third-party action against third-party defendants Gary Fisher (hereinafter Fisher) and Mary Jane Fisher, the owners of Dee, and third-party defendant Consetta Sucese, the owner of Car-Lins.[FN1] Following joinder of issue, the Fishers and Sucese separately moved for summary judgment dismissing the third-party complaint. Defendants moved for summary judgment dismissing plaintiffs' complaint and cross-moved for summary judgment on their third-party complaint. Supreme Court granted third-party defendants' motions and dismissed the third-party complaint, and denied defendants' motion and cross motion. Defendants appeal.[FN2]
"[A] landowner or the owner of an animal may be liable under ordinary tort-law principles when a farm animal — i.e., a domestic animal as that term is defined in Agriculture and Markets Law § 108 (7)[FN3] — is negligently allowed to stray from the property on which the animal is kept" (Hastings v Sauve, 21 NY3d 122, 125-126 [2013]; see Thompson v Brown, 167 AD3d 1310, 1311 [2018]). Moreover, "[a] prima facie case of negligence can be made against the owner of a [horse] wandering unattended on a road, which causes damages to a plaintiff's vehicle or person. That presumption is rebuttable upon proof that the animal's presence on the highway was not caused by the owner's negligence" (Johnson v Waugh, 244 AD2d 594, 596 [1997] [internal quotation marks and citations omitted], lv denied 91 NY2d 810 [1998]; see Young v Wyman, 159 AD2d 792, 793 [1990]). "In other words, 'liability for damages caused by stray horses cannot be imposed unless the [owner's] conduct in some way contributes to the injury'" (Johnson v Waugh, 244 AD2d at 596, quoting Jones v Chalaire, 85 Misc 2d 767, 768 [1975]; see Alioto v Denisiuk, 23 Misc 2d 292, 293 [1960]).
Here, it is undisputed that third-party defendants had virtually unlimited access to the horses and surrounding fields, and unlimited discretion as to when to leave the horses in the stables or in the fenced in field. Both Fisher and Sucese testified that they were physically present at the horse farm on the day the accident occurred, and that the horses were in the fenced in field on that day[*2]. Fisher testified that he was at the farm from morning until mid-afternoon. Sucese said that she and her 14-year-old son were there from 5:00 p.m. to 6:00 p.m. During the time that Sucese was there, she watched as her son fed the horses. She testified that he accomplished this by climbing up on the fence, which she said was approximately 12 to 15 feet from the gate, and dumped the feed in a bucket. She avowed that neither she nor her son entered the field with the horses that day. She further testified that the gates to the field were closed. Importantly, defendants both testified that they inspected the property the morning immediately following the accident, and that the gates were all closed and the fence was intact. Moreover, the record reveals that neither Fisher nor Sucese was responsible for regular maintenance of the fence itself. Through the presentation of this evidence, third-party defendants successfully rebutted any presumption of negligence and demonstrated their entitlement to judgment as a matter of law.
In response, defendants argue that numerous issues of fact exist. However, other than asserting that these facts concern what occurred and who engaged in, or failed to engage in, reasonable conduct, they decline to be more specific (see Howard v Cahill, 290 AD2d 712, 715 [2002]). Defendants' claim — that there is no proof that they acted unreasonably — does not raise an issue of fact vis-À-vis third-party defendants. Nor does defendants' argument that third-party defendants' retention of the care, custody and control of the horses raise an issue of fact absent any proof in the record that the horse owners' conduct contributed to the injury (see Bloomer v Shauger, 21 NY3d 917, 918 [2013]). We disagree with defendants' assertion that third-party defendants' performance of various chores in exchange for rent — including occasionally helping repair the fence, or, in the case of Fisher, that he "regularly inspect[ed] . . . the fence[]"[FN4] — created a duty of some sort. This limited offset of rent for services did not create a duty to repair the fence, especially as defendants/landlords retained control of the premises,[FN5] did not specifically enter into a contract with the Fishers or Sucese to repair or maintain the property, and historically assumed responsibility to repair the property (see Vanderlyn v Daly, 97 AD3d 1053, 1055 [2012], lv denied 20 NY3d 853 [2012]). Even were we to find a duty, there is no evidence in the record that any such duty was breached. Third-party defendants' mere presence at the horse farm on the day of the accident and speculation as to what they might or might not have done is not enough to tether them to the case, as "the evidence must be sufficient to permit a finding based on logical inferences from the record and not upon speculation alone" (Flahive v Union Coll., 99 AD3d 1151, 1153 [2012] [internal quotation marks and citations omitted]; see Schneider v Kings Hwy. Hosp. Ctr., 67 NY2d 743[*3], 744 [1986]). In light of the complete lack of evidence of negligence in the record, Supreme Court properly granted summary judgment to third-party defendants dismissing the third-party complaint (see Bloom v Van Lenten, 106 AD3d 1319, 1321 [2013]). We have examined defendants' remaining contentions and find them to be unpersuasive.
Garry, P.J., Lynch and Aarons, JJ., concur.
ORDERED that the order is affirmed, with one bill of costs.



Footnotes

Footnote 1: Sucese denies that she is the owner of Car-Lins and, in fact, has not seen the horse since the accident.

Footnote 2: Defendants do not contend on appeal that Supreme Court erred in denying their motion for summary judgment seeking dismissal of plaintiffs' complaint.

Footnote 3: Pursuant to this statute, a horse is defined as a domestic animal.

Footnote 4: Defendants contend that Fisher testified at his deposition that he walked the property line and inspected the fence and would regularly do so. A review of the record reveals this to be a mischaracterization of his testimony. Fisher's remarks concern his actions after the accident. Specifically, in response to being asked by the attorney for plaintiff Tamica Saddlemire if he inspected the fence at defendants' property after the incident, Fisher replied, "I walked a lot of it as I would come to it and it was still up. I tried to find where they jumped the fence and didn't find anything." When the attorney asked him if the fence is pretty much the same, stating, "Well, you haven't been out there in a long time," Fisher stated that he "goes by there every day" — not that he walks the fence every day.

Footnote 5: Defendants own, operate, occupy and stable their own horses on the horse farm.