Fritz v Walden Playboys M.C. Inc. (2023 NY Slip Op 03524)

Fritz v Walden Playboys M.C. Inc.

2023 NY Slip Op 03524

Decided on June 29, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 29, 2023

535381
[*1]Joseph C. Fritz et al., Respondents,
v
Walden Playboys M.C. Inc., Appellant, et al., Defendants.

Calendar Date:April 25, 2023

Before:Garry, P.J., Egan Jr., Lynch, Fisher and McShan, JJ.

Roemer Wallens Gold & Mineaux LLP, Albany (Matthew J. Kelly of counsel), for appellant.
Peter A. Ouda, Somerville, New Jersey, admitted pro hac vice, for respondents.

Fisher, J.
Appeal from an order of the Supreme Court (Richard Mott, J.), entered May 6, 2022 in Ulster County, which denied a motion by defendant Walden Playboys M.C. Inc. for summary judgment dismissing the complaint against it.
In September 2016, plaintiff Joseph C. Fritz sustained injuries during a motocross practice at the Walden motocross track, a recreational facility owned and operated by defendant Walden Playboys M.C. Inc. (hereinafter Walden), when he went off a jump and lost control of his bike after landing in a hole on the track. Fritz and his spouse, derivatively, commenced this negligence action against defendants, who answered and asserted several affirmative defenses, including that Fritz had assumed the risk of injury when he engaged in the sport of motocross. Following discovery, Walden moved for summary judgment, arguing, among other things, that plaintiffs' claims were barred by the primary assumption of risk doctrine. Plaintiffs opposed the motion, arguing, among other things, that defendants created an unreasonable risk of harm by failing to address a hole that developed on the track, which was caused by their negligent grooming of the track with soil that was too dry. Supreme Court denied the motion, and Walden appeals.[FN1]
The primary assumption of risk doctrine provides that, "by engaging in a sport or recreational activity, a participant consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (Morgan v State of New York, 90 NY2d 471, 484 [1997]; see Grady v Chenango Val. Cent. Sch. Dist., ___ NY3d ___, ___, 2023 NY Slip Op 02142, *2 [2023]). Therefore, "[i]f the risks of the activity are fully comprehended or perfectly obvious, [the] plaintiff has consented to them and [the] defendant has performed its duty" (Youmans v Maple Ski Ridge, Inc., 53 AD3d 957, 958 [3d Dept 2008] [internal quotation marks and citation omitted]). Although such consent also extends to "suboptimal playing conditions" that are "readily apparent" to a participant(Bukowski v Clarkson Univ., 19 NY3d 353, 357 [2012]; see Maddox v City of New York, 66 NY2d 270, 274-275 [1985]), "[a] participant is not, however, deemed to have assumed risks that are concealed or unreasonably enhanced" (Grady v Chenango Val. Cent. Sch. Dist., 2023 NY Slip Op 02142 at *1 [internal quotation marks and citation omitted]; see Thompson v Windham Mtn. Partners, LLC, 161 AD3d 1366, 1366 [3d Dept 2018]). As a result, "[w]hen determining whether the doctrine applies, we assess the participant's knowledge of the dangerous condition and consequent risk against the background of his or her skill and experience" (Connolly v Willard Mtn., Inc., 143 AD3d 1148, 1149 [3d Dept 2016] [internal quotation marks, brackets and citation omitted]; see Sara W. v Rocking Horse Ranch Corp., 169 AD3d 1342, 1343 [3d Dept 2019]).
Here, the record established that Fritz was the quintessential motocross expert. He testified [*2]that he had 43 years of experience riding motocross, owned a track and that he was well aware of the risks of injury inherent to motocross from having previously suffered more injuries than he could count. He further testified that he was quite familiar with Walden's track, having been there "probably over a thousand times" before the accident, and that he could perform the jump where he was ultimately injured "pretty much blindfolded." As it relates to the accident, the record reveals that Fritz went out on his first practice lap with the expert class of riders and had "something really strange
happen[ ]," which caused his "bike to react funny" when he landed the jump at issue. Specifically, he testified that the back of his bike "kicked up" but he was able to recover. Rather than pulling off the track to investigate, Fritz testified that he had to "feel the track out" and "if there's something a little strange with the track . . . [he has] to figure [that] out so [he] can deal with it on race day."[FN2] On his second practice lap, Fritz adjusted his take-off for the jump by moving over about a foot and a half from the main line of riders. Despite this, Fritz testified that he landed in "deep powder" that was "like talcum powder" and the back of his bike kicked up again. He explained that he tried to recover because he had been doing this "a long time" and that he "wasn't going to just bail off the motorcycle," but that he was ultimately thrown over the handlebars, causing him to sustain injury. While he was on the ground, he observed a pothole filled with dry soil, which he estimated to be about three feet long, two feet wide and eight inches deep.[FN3] Fritz further testified that, although he knew that holes develop and the track deteriorates from other riders, it was unusual for a hole to form that early in the day and that the powdery type of dirt was something "totally different than anything [he has] ever seen there before."
Walden also provided the testimony of several volunteer club members, who collectively testified that the dirt used in grooming the track came from the pits on the track's property, that the dirt was not new or different than what is ordinarily used and that the conditions on any motocross track can change every 5 to 10 minutes as a race continues. These points were echoed by Walden's expert, who submitted an affidavit in support of its motion for summary judgment, averring that motocross is an "inherently risky activity" and riders encounter "constantly-changing conditions" that cannot be entirely prevented because, while imperfect, they are "unavoidable" and even "integral to the activity." He further stated that the hole that caused Fritz's accident was "not an unusual condition" on a motocross track, and that the presence of sandy or powdery dirt is not uncommon and "within the normal range of variable terrain encountered by motocross riders." Based on the foregoing, we find that Walden satisfied its moving burden of demonstrating [*3]that Fritz assumed the risk inherent in the sport of motocross (see Connolly v Willard Mtn., Inc., 143 AD3d at 1149; Youmans v Maple Ski Ridge, Inc., 53 AD3d at 959; see also Mamati v City of N.Y. Parks & Recreation, 123 AD3d 671, 672 [2d Dept 2014]).
Upon such a showing, it was incumbent on plaintiffs "to demonstrate facts from which it could be concluded that [Walden] unreasonably enhanced the danger or created conditions which were unique or above those inherent in the activity" (Connolly v Willard Mtn., Inc., 143 AD3d at 1149 [internal quotation marks, ellipses, brackets and citation omitted]). Although plaintiffs argue that Fritz did not observe the dry soil that defendants used to groom and fill the landing area pothole until after his accident and when he was on the ground, it is clear from the record that Fritz became immediately aware of a condition in that landing area that was "strange" and caused his bike to react "funny," but, based on his experience and need to "feel the track out," he went around for another practice lap (see Joseph v New York Racing Assn., 28 AD3d 105, 108 [2d Dept 2006]; see also Maddox v City of New York, 66 NY2d at 274-275; Dobert v State of New York, 8 AD3d 873, 874 [3d Dept 2004]; Cruz v State of New York, 1 AD3d 747, 747 [3d Dept 2003]). Despite that Fritz did not visually observe the dirt or the pothole before his fall, unlike the plaintiffs in Joseph, Maddox, Dobert or Cruz, the record establishes that motocross riders would not typically see a landing area until they are past it — a point stressed by Fritz in this matter, but also in an unrelated matter where he testified that landing areas were "blind" and therefore riders had to rely on flaggers to warn them of a hazard on the ground in the landing area such as a downed bike or rider. As a result of this, Fritz testified at several points in the record that motocross riders had to "feel" out a track and the conditions. This is also what Fritz explained he was doing after his first lap and why he would not just pull off, testifying that he "wasn't really sure . . . what was going on with this section of the track." In instances like this, where it is clear that the plaintiff was aware of a condition but nevertheless continued with his or her activity, the doctrine of primary assumption of risk has been applied — including where the defect was partially concealed and not directly observed (see Martin v State of New York, 64 AD3d 62, 65-66 [3d Dept 2009], lv denied 13 NY3d 706 [2009]; see also Festa v Apex Capital, LLC, 171 AD3d 1016, 1018 [2d Dept 2019]; Dalton v Adirondack Saddle Tours, Inc., 40 AD3d 1169, 1171 [3d Dept 2007]).
Even though the record is unclear whether Fritz, in recognizing that something strange happened to his bike the first time he landed the jump, was specifically aware that his bike's reaction was due to the dry soil filling the pothole, "it is not necessary to the application of the doctrine that the injured plaintiff may have foreseen [*4]the exact manner in which the injury occurred so long as he or she is aware of the potential for injury of the mechanism from which the injury results" (Joseph v New York Racing Assn., 28 AD3d at 108 [internal quotation marks and citation omitted]; see Martin v State of New York, 64 AD3d at 65-66). Considering that Fritz testified that on both jump landings the back end of his bike "kicked up," that he hit the same pothole and that he had to work to recover the bike, we are satisfied that he was aware of the potential for injury on that jump's landing (see Maddox v City of New York, 66 NY2d at 278-279; Joseph v New York Racing Assn., 28 AD3d at 108; Papa v Russo, 279 AD2d 744, 745 [3d Dept 2001], lv denied 99 NY2d 507 [2003]). For this reason, we also reject Fritz's conflicting testimony that it was not customary for there to be a hole in a landing area, because he also testified that he had experienced them before — including on the first lap's landing — and that ruts and bumps were what gave a motocross track character, thereby further establishing that such holes were inherent to the sport (see Festa v Apex Capital, LLC, 171 AD3d at 1018; Dalton v Adirondack Saddle Tours, Inc., 40 AD3d at 1171).
To the further extent that Fritz challenges Walden's use of the dry, talcum powder-like soil, his affidavit in opposition narrowly claims that he previously told Walden that he would not use such soil on his track. However, this narrow position did not rebut the opinion by Walden's expert that the soil was within the range of normal soil conditions to be expected on a motocross track or otherwise offer evidence that such dry soil was inappropriate in this scenario or as an industry standard (see generally Martin v State of New York, 64 AD3d at 66; Youmans v Maple Ski Ridge, Inc., 53 AD3d at 960). Furthermore, despite taking issue with defendants' use of this soil and their grooming, Fritz also conceded in the unrelated matter that "[t]here's no exact recipe to grooming a track" and that, indeed, the purpose of grooming was to soften the dirt on the top layer, which is better than a hard pack for riding. These conclusory and conflicting statements by Fritz were insufficient to create an issue of fact (see Rivera v Glen Oaks Vil. Owners, Inc., 41 AD3d 817, 821 [2d Dept 2007], lv denied 9 NY3d 817 [2008]; see also Valenti v Exxon Mobil Corp., 50 AD3d 1382, 1384 [3d Dept 2008]).[FN4] Moreover, plaintiffs' attorney-drafted CPLR expert disclosure response was not evidentiary proof in admissible form sufficient to defeat a motion for summary judgment (see Bacani v Rosenberg, 114 AD3d 454, 455 [1st Dept 2014]; Velasco v Green-Wood Cemetery, 48 AD3d 271, 272 [1st Dept 2008]; Peris v Western Regional Off-Track Betting Corp., 255 AD2d 899, 899-900 [4th Dept 1998]). Accordingly, because plaintiffs did not raise an issue of fact as to whether Walden concealed or unreasonably increased the risks to which Fritz was exposed, Walden's motion should have been granted (see [*5]Grady v Chenango Val. Cent. Sch. Dist., 2023 NY Slip Op 02142 at *2; Martin v State of New York, 64 AD3d at 66; Joseph v New York Racing Assn., 28 AD3d at 114; see also Bukowski v Clarkson Univ., 19 NY3d at 358; Legac v South Glens Falls Cent. School Dist., 150 AD3d 1582, 1585 [3d Dept 2017], lv denied 30 NY3d 905 [2017]; Schorpp v Oak Mtn., LLC, 143 AD3d 1136, 1137-1138 [3d Dept 2016]). We have examined the parties' remaining contentions and have found them to be rendered academic or otherwise without merit.
Garry, P.J., Egan Jr. and McShan, JJ., concur.
Lynch, J. (dissenting).
I respectfully dissent. To begin, I readily agree with the majority that defendants met their prima facie burden. That said, it is my view that plaintiffs — including plaintiff Joseph C. Fritz, who was unquestionably an experienced motocross rider — raised a question of fact as to whether defendant "concealed or unreasonably enhanced" (Grady v Chenango Val. Cent. Sch. Dist., ___ NY3d ___, ___, 2023 NY Slip Op 02142, *4 [Apr. 27, 2023] [internal quotation marks and citation omitted]) the risks he confronted on the day he was injured. In his deposition, Fritz testified that there was a "big pothole" on the landing of the jump that had been filled with powdered dirt. He observed that the hole "was probably about three feet long, probably two feet wide and, I don't know . . . maybe eight inches deep."[FN5] Fritz explained that the powdered dirt was not compacted and caused the track to deteriorate rapidly, when, under ordinary conditions, a track would "get rougher and rougher[,] progressively." Fritz, who had owned his own motocross track for 16 years at the time of his deposition, acknowledged that it was customary for there to be ruts and bumps on a track, but "[n]ot on landings or take-offs." Fritz was familiar with the track and maintains that he had previously warned defendants not to utilize the type of powdered dirt that was present on the date of his injury. Nevertheless, as he was "laying on the ground . . . [he] could see . . . that this dirt was like a talcum powder type dirt, which [wa]s totally different than anything [he] had ever seen [at the jump location] before."
In his first practice run, sometime between 10:30 a.m. and 11:00 a.m., Fritz explained that "something really strange happened." To that end, he explained that the back of his bike "like kicked up" and, although he "regained control of the motorcycle, . . . [he] wasn't really sure what happened" (compare Joseph v New York Racing Assn., 28 AD3d 105, 109 [2d Dept 2006] [plaintiff assumed the risk of injury where he was aware of open and obvious wet conditions before being injured on the second lap around a riding ring]). On the second run, he adjusted the jump by moving about 18 inches to the right but hit the same hole when his "bike kicked up in the air . . . and the front wheel was like in . . . deep powder." He explained that, "[a]s soon as [he] landed[, his] speed was abruptly slowed because [*6]of this deep powder dirt," causing him to "go over the handlebars." Viewed in a light most favorable to plaintiffs, as the non-moving parties (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]), the operative point from the testimony is that defendants arguably enhanced the risks of injury by filling a deep hole at a landing point with the wrong type of dirt that easily gave way, creating a dangerous condition that caused Fritz's crash. Fritz's uncertainty as to what happened on the first run and his slight adjustment of the travel lane indicate that the hole in the track was not open and obvious, or at least raises a question of fact in that regard (compare Martin v State of New York, 64 AD3d 62, 64 [3d Dept 2009], lv denied 13 NY3d 706 [2009]). Ultimately, "[i]t was not the trial court's role, on summary judgment, to assess the fact-bound question of whether" the track's conditions as described by Fritz unreasonably enhanced the inherent risks of the event (Scurry v New York City Hous. Auth., ___ NY ___, ___, 2023 NY Slip Op 02752, *4 [May 23, 2023]).
As to defendants' awareness of the condition, the record indicates that the track was groomed prior to the practice session, which began around 9:00 a.m. Kyle Kasnowski, who performed the grooming, testified that there was no hole before the session began but he observed the hole on his first run. Katherine Fox, president of defendant Walden Playboys M.C. Inc. at the time of the incident, testified that Chris Traina, whose son was a novice rider, informed her that his son advised that there was a hole at the jump. Traina also directly complained to Fritz, who repeated the complaint to Fox before going on his second run. In response, Fox testified that she immediately radioed the two members of the safety committee, Steve Kasnowski and Wayne Clark, and asked them "to check it out." Fox affirmatively testified that they checked out the landing site "because [she] asked them to," but acknowledged she did not confirm that they actually did so. For his part, Steve Kasnowski testified that he did not check out the hole before the incident and the record does not include any statement from Clark. It follows that a question of fact also exists as to whether defendants had a reasonable opportunity to repair the hole and yet failed to do so.
With respect to the written waiver that Fritz signed, I agree with Supreme Court that a question of fact exists as to whether General Obligations Law § 5-326 pertains due to the reciprocal use arrangement allowing Fritz to use defendants' track, and defendants' members to use Fritz's track.
ORDERED that the order is reversed, on the law, with costs, motion granted and complaint dismissed against defendant Walden Playboys M.C. Inc.

Footnotes

Footnote 1: Defendants also filed a notice of appeal from a prior order of Supreme Court entered on January 28, 2022, which is included in the record on appeal. However, inasmuch as defendants failed to timely perfect that appeal within six months of that filing (see Rules of App Div, All Depts [22 NYCRR] § 1250.9 [a]), this Court dismissed appeal No. 534795, effective August 1, 2022 (see Rules of App Div, All Depts [22 NYCRR] § 1250.10 [a]; see also Rules of App Div, 3d Dept [22 NYCRR] § 850.10). As such, any contentions related to appeal No. 534795 are not properly before us.

Footnote 2: Tellingly, Fritz also reasoned that, if he pulled off the track to investigate, he thought other riders would also stop and ask him why he pulled off and he testified that he did not know what he would tell them.

Footnote 3: Fritz was the only witness to provide an estimate of the pothole's size.

Footnote 4: As to the extent of the powder, Fritz initially testified that he landed in "over a foot deep of like a talcum powder type [of] dirt" but, later in his deposition, conflictingly testified that the depth of the pothole filled with that dirt was just eight inches.

Footnote 5: The photographs in the record, taken long after the incident, depict the location of the fall, not the site conditions at the time of the fall.